**In re MAKO, INC.,**
**EID 73–1775360, Debtor.**

**Bankruptcy No. 88–70475.**

United States Bankruptcy Court,
E.D. Oklahoma.

Aug. 17, 1990.

Thomas A. Creekmore, III and Kenneth G.M. Mather, Tulsa, Okl., for Retail Marketing Co.

Dominic Sokolosky, Tulsa, Okl., for Admire Bank & Trust.

E. Lamar Pettus, Fayetteville, Ark., for Northwest Nat. Bank of Fayetteville, Ark.

Jack Santee, Tulsa, Okl., Litigation Trustee.

## ORDER

JAMES E. RYAN, Chief Judge.

On June 15, 1990, this Court received oral argument regarding a Motion and Application to Approve Agreement to Burden Proceeds of Litigation; to Employ Counsel; to Appoint Advisory Committee; to Limit Notice filed by Jack H. Santee, the Litigation Trustee (Docket Entry No. 1516) and the Objection to the Motion filed by Admire Bank & Trust Company (Docket Entry No. 1519), Response by Northwest National Bank with Brief in Support (Docket Entry Nos. 1520 and 1521) and Retail Marketing Company's Reply to the Objection by Admire Bank & Trust Company (Docket Entry No. 1522). Appearances were entered at the hearing by Jack Santee, the Litigation Trustee; Ken Mather and Thomas Creekmore on behalf of Retail Marketing Company ("RMC"); and Dominic Sokolosky on behalf of Admire Bank & Trust ("Admire").

After an extensive review of the above-referenced pleadings, the confirmed Chapter 11 Plan in this case, and the applicable law, this Court does hereby enter the following Findings of Fact and Conclusions of Law in conformity with B.R. 7052 in this core proceeding:

### ISSUE

The sole issue presented by the pleadings is whether the agreement proposed by the Litigation Trustee and RMC is subject to Court approval, and if so, whether the agreement should be approved.

## FINDINGS OF FACT

1. On June 2, 1989, this Court confirmed the Plan proposed by Delaware County Bank, a creditor of the former bankruptcy estate, on behalf of RMC. RMC was neither affiliated with the Debtor nor a creditor of the estate, but rather under the Chapter 11 Plan ("Plan") purchased the assets of the Debtor corporation, assumed the priority and secured debt of the Debtor and utilized the long term payout provisions of the United States Bankruptcy Code to satisfy these creditors.

2. Upon Court inquiry at the hearing to consider confirmation of RMC's Plan, the Debtor was unable to provide the precise amount owed to administrative claimants. Although this Court had, without recognized authority, established an administrative claims bar date, additional administrative expenses were incurred by the Debtor and thus uncertainty as to the amount owed to these claimants resulted. Aware of the requirement of 11 U.S.C. § 1129(a)(9)(A) that all administrative claims be satisfied prior to a Plan becoming effective, this Court solicited an averment from RMC that all administrative claims would be paid, regardless of the final tally. RMC specifically stated that the administrative claims would be paid, *whatever the amount.* As stated by RMC, it was willing to do "whatever it takes" to obtain confirmation. Based upon this averment by RMC, as well as a finding of compliance with 11 U.S.C. § 1123(a) and § 1129(a), (b) and (c), less subsection (a)(8), RMC's Plan was confirmed.

The Plan created two offices to effectuate its terms. The Liquidating Trustee was established to accept all assets of the estate and transfer these assets to RMC. The Liquidating Trustee also accepted the proceeds necessary to satisfy their administrative claimants from RMC and distributed these proceeds to the administrative claimants. The Liquidating Trustee filed his Final Report and Account and Motion for Determination that all Class 1 Claims (i.e., administrative claims) Had Been Paid and Application for Final Decree and Discharge on September 21, 1989. This Final Report was approved by the Court on October 20, 1989. Subsequently, on February 5, 1990, the Liquidating Trustee filed a Supplement to the Final Report and Accounting and Application for Final Decree. This Supplement was approved on March 8, 1990. As a result, the Liquidating Trustee was discharged and his bond exonerated on this date. By this date, all assets had been transferred and the payments under the Plan had commenced. As a result, the Plan has been "substantially consummated," as that term is defined under 11 U.S.C. § 1101(2), realized in fact if not in formal pleadings in the file.

The Plan also created the office of the Litigation Trustee. The Litigation Trustee was established to pursue certain limited adversarial actions. Specifically, the Plan states, in pertinent part, at paragraph 6.04:

On the effective date, the Liquidating Trustee shall be deemed to have conveyed the assets described on the attached Exhibit "G" to Jack H. Santee, who shall act as the "Litigation Trustee" on behalf of all unsecured creditors, under such terms (including terms regarding his compensation and the compensation of any professionals employed by him) as may be approved by the Court. Under no circumstances shall the Litigation Trustee be required to investigate, or prosecute any of the causes of actions described on Exhibit "G," or seek to satisfy any judgments obtained in any such actions, unless and until one or more unsecured creditors shall have provided funding to the Litigation Trustee for such purposes. With Court approval, the Litigation Trustee may agree to return any such advance funding by an unsecured creditor to the party or parties so advancing from the proceeds of any judgments obtained or settlements reached in any of the subject litigation. The Court shall retain jurisdiction to provide instructions, if necessary, to the Litigation Trustee with regard to the discharge of his duties hereunder. All sums recovered by the Litigation Trustee on behalf of the unsecured creditors, after paying the reasonable expenses of the Litigation Trustee and his profession-

als, and compensating any unsecured creditor(s) who provide advance funding of the costs of such litigation, shall be distributed by the Litigation Trustee, upon direction of the Court, in accordance with the distribution priority established in Article V, provided that Litigation Trustee shall not be obligated to make a prorata distribution to the holders of Class 23 claims (unsecured claims) if the Litigation Trustee determines that the cost to make such distribution exceeds the amount held by the Litigation Trustee to be distributed. In such case, the Litigation Trustee shall seek instruction from the Court as to the proper disposition of such proceeds. Any litigation thus pursued by the Litigation Trustee shall be at the sole cost and expense of the holders of Class 23 claims (unsecured claims), and no further administrative claims shall be assessed against the assets to be acquired by RMC hereunder as a result hereof. (bracketed information added by Court)

The specific causes of action which the Litigation Trustee is empowered to pursue are found at Exhibit G of the Plan. These actions are limited to:

> The following claims and/or causes of actions ... to be assigned to the Litigation Trustee, excluding any potential preference avoidance actions against Marvin Morse and/or the firm of Morse & Sexton.
>
> (a) Adversary Case No. 88–0054, against Gerald and Phyllis Bivens.
>
> (b) Adversary Case No. 88–0079, against Michael Treat, for turnover of property.
>
> (c) Adversary Case No. 88–0074, against Jim Treat, for turnover of property.
>
> (d) Any and all claims against insiders or affiliates of the Debtor (as defined by the Code), including without limitation Debtor's management, to the extent, but only to the extent, such claims arose on or before March 23, 1989.

None of the actions set forth in paragraphs (a), (b) or (c) found in Exhibit G are currently pending in this Court.

3. The Plan also sets forth RMC's rights regarding further litigation. In particular, the Plan provides at Paragraph 6.01, subparagraph .05 that:

> 6.01. Upon satisfaction of the conditions precedent set forth in Article XI, confirmation will result in: ...
>
> 6.01.05. The assumption by RMC of all of the debtor's rights in pending litigation constituting contested matters or adversary proceedings in this case, and all pending appeals to which debtor or the liquidating trustee is or was a party on the effective date (other than the litigation described on Exhibit "G" hereto) together with the right to prosecute or defend any other such litigation which the debtor or liquidating trustee may have brought on or before the effective date. Without limiting the generality of the foregoing, RMC shall be entitled to prosecute all objections to claims which may exist on the effective date, or any others to which RMC may object in accordance with the plan, and may appear as the real party in interest in any pending or later instituted contested matter or adversary proceeding filed herein.

4. The agreement between RMC and the Litigation Trustee for which Court approval is sought is comprised of several components, to-wit:

(i) employment by the Litigation Trustee of the law firm of Jones, Givens, Gotcher & Bogan and the law firm of Moyers, Martin, Santee, Immel & Tetrick;

(ii) employment of an advisory committee to represent the interests of the unsecured creditors and to assist the Litigation Trustee;

(iii) the joinder or substitution of the Litigation Trustee as a party Plaintiff in all existing avoidance litigation;

(iv) distribution of the proceeds realized from the prosecution of the avoidance actions such that the net proceeds are distributed equally between the Litigation Trustee and RMC until $3,000,000 has been disbursed. The amount intended to be distributed to RMC, some $1,500,000, is intended as reimbursement for payment on adminis-

trative claims over and above the amount estimated by the Debtor.

The Motion and Application for Approval of the agreement recognizes a dispute between the Litigation Trustee and RMC as to the proper party in interest entitled to prosecute the avoidance actions under the confirmed Plan.

## CONCLUSIONS OF LAW

A. Initially, this Court must attempt to characterize the Motion and Application in order to conclude, first, whether this Court has appropriate jurisdiction to rule on the Motion and Application; and second, to determine whether the Motion and Application is permitted under the Bankruptcy Code, Rules and the confirmed Plan in this case. The Motion and Application cannot stand as a Motion to modify the confirmed Chapter 11 Plan in this case since post "substantial consummation" modifications of Plans are prohibited by the Bankruptcy Code. 11 U.S.C. § 1127(b). Further, the Motion cannot be viewed as a Motion to Approve Compromise pursuant to B.R. 9019, since only a Code created Trustee may make such a request and also, since the Plan does not address this Court having approval authority over any proposed compromises. Counsel for RMC has suggested that the Motion and Application serve basically as a "Motion to Clarify" the Plan terms. We concur with this concession of RMC and the Litigation Trustee that the Plan is inherently vague and ambiguous and therefore in need of clarification. The Bankruptcy Court generally retains concurrent jurisdiction with an appropriate State Court to interpret a Chapter 11 Plan, post-confirmation. Under the Plan confirmed in this case, this Court is also authorized to provide instruction to the Litigation Trustee with regard to the Discharge of his duties. See Paragraph 6.04 of the Plan. Thus, this Court may consider the Motion.

B. Viewed as a request to interpret the Plan and to provide instruction to the Litigation Trustee, the Motion and the agreement for which approval is sought goes well beyond "clarification" of the existing terms of the Plan. The terms of the agreement substantially modify essential terms of the confirmed Plan in this case. The agreement provides for the payment of some $1.5 million to RMC in reimbursement of monies paid on the administrative claims over and above the Debtor's estimate of the extent of those claimants. RMC agreed at confirmation to pay all administrative claims, whatever the amount. This agreement was essential since the Plan could not become effective until and unless *all* administrative claimants had been satisfied. For this reason, this Court considers the payment made toward the administrative claimants as a portion of the purchase price for acquiring the Debtor's assets and any payment made toward RMC from any proceeds realized from the successful prosecution of the avoidance actions would be an attempted recover of a portion of the purchase price. The purchase of the Debtor's assets was an arm's-length transaction governed by the guidelines of the Bankruptcy Code and thus, we shall not condone or allow any attempted recovery of the purchase price.

RMC has asserted a theory that they have been "subordinated" to the administrative claimants over and above the amount estimated by the Debtor. This theory is offered without authority under the current state of the law or under the confirmed Plan in this case.

C. The Litigation Trustee also requests that this Court approve the employment of counsel. We are not authorized to perform this function under the Plan confirmed in this case. As a result, this action is in the discretion of the Litigation Trustee only.

D. Our interpretation of the Plan does not reveal the intention to include the terms contained in the agreement. Instead, the agreement attempts to substantially alter the Plan, post-confirmation. In this Court's opinion, the agreement either meets court muster in its entirety or it fails. For the reasons stated herein, we cannot and will not approve the agreement.

IT IS THEREFORE ORDERED that the Motion and Application to Approve Agreement to Burden Proceeds of Litigation; to Employ Counsel; to Appoint Advisory Committee; to Limit Notice is hereby denied.