JON 0. NEWMAN, Circuit Judge.
 

 This appeal concerns the narrow issue of whether, in a Chapter 11 reorganization proceeding, a creditor who fails to appeal a post-confirmation order appointing a trustee is precluded from challenging the trustee’s appointment when the trustee subsequently obtains an order affecting the creditor’s interests. This issue arises on an appeal by Kenneth P. Silverman, trustee for the debtor American Preferred Prescription (“APP”) from the September 26, 2000, order of the District Court for the Eastern District of New York (Denis R. Hurley, District Judge) reversing an order of the Bankruptcy Court (Dorothy Eisen-berg, Bankruptcy Judge). The Bankruptcy Court had denied the motion of Tracar, S.A. (“Tracar”), a creditor, to remove Sil-verman as trustee. The District Court ruled that the Bankruptcy Court lacked jurisdiction to appoint a trustee after the confirmation of the debtor’s reorganization plan. We conclude that Tracar had an opportunity to challenge the appointment of Silverman by appealing the post-confirmation appointment order giving him full trustee powers, and, having failed to do so, is now precluded from challenging his authority. We therefore reverse and remand.
 

 Facts
 

 APP operates a mail order pharmaceutical service. In June 1993, APP filed a Chapter 11 reorganization petition. In March 1996, the Bankruptcy Court confirmed APP’s plan of reorganization (“Plan”), which provided for the full payment of all allowed claims with interest. In the order confirming the Plan, the Court also “reserve[d] and retain[ed] jurisdiction in accordance with Articles 4.6 and 11 of the Plan and the provisions of the Bankruptcy Code and Bankruptcy Rules” and retained the authority to “make ...
 
 *89
 
 such Orders to aid in the consummation of the Plan or in accordance with said Plan as the Court shall deem appropriate.”
 

 The confirmed Plan contains a lengthy “retention of jurisdiction” section. This section provides: “The Court shall retain jurisdiction of this Chapter 11 case pursuant to and for the purposes set forth in Section 1127(b) of the Code,” and then sets out a broad list of reserved tasks and powers, including the power “to make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof,” Article 10.1(q). However, the Plan does not contain a clause explicitly authorizing the court to appoint a trustee.
 

 Appointment of the Trustee.
 
 The post-confirmation appointment of a trustee for APP arose out of developments in the Chapter 11 proceeding of American Prescription Plan, Inc. (“AP Plan”). Cost Controls, Inc. (“Cost Controls”), a creditor of AP Plan, discovered that AP Plan was trying to evade its bankruptcy obligations by funneling assets to APP. Cost Controls then brought an adversary action against APP in APP’s Chapter 11 proceeding. That action was adjudicated by Bankruptcy Judge Francis G. Conrad, who ruled in Cost Controls’ favor, finding that APP and AP Plan were alter egos and that the common principals of both companies were fraudulently diverting assets from AP Plan to APP to bypass AP Plan’s creditors. He entered judgment in favor of Cost Controls against APP for compensatory and punitive damages.
 

 Apprehending that APP’s principals would defraud APP’s creditors, as they had done to the creditors of AP Plan, Cost Controls asked Judge Eisenberg to appoint a trustee to monitor APP’s assets pending the execution of the Plan.
 

 On April 11, 1997, Judge Eisenberg appointed Silverman as trustee, rejecting APP’s objection that section 1104 of the Bankruptcy Code authorizes the appointment of a trustee only before confirmation of a reorganization plan. She ruled that she had authority to appoint a trustee by virtue of the Court’s broad equitable powers codified in section 105 of the Bankruptcy Code. However, she indicated that she envisioned the trustee operating “merely in a watchdog capacity.”
 
 [1]
 
 She emphasized that APP appeared to be operating profitably, and that she hesitated to jeopardize this success by inserting an operating trustee with full powers.
 

 She therefore ruled that she would continue a previously issued temporary restraining order prohibiting the debtor from transferring any of its property outside its ordinary course of business, and she authorized the trustee to look at all of the company’s expenditures and have access to all of its books and records. However, she did not give the trustee the power to veto any expenditures implicating “substantial business decisions” or “anything out of the ordinary course” without
 
 *90
 
 first obtaining Court approval. No appeal was taken from the April 11, 1997 order.
 
 [2]
 

 Expansion of the Trustee’s Powers.
 
 The Bankruptcy Court expanded the Trustee’s powers twice in the ensuing months. The first expansion came after Silverman’s initial report in June of 1997 detailed further instances of wrongdoing by APP and its principals. APP’s creditors (among them Cost Controls) requested that Silverman’s powers be expanded to include the authority to investigate and settle claims. The Court granted this motion, emphasizing that Silverman’s settlements would not be binding without an order of the Court. No appeal was taken from this order.
 

 The second expansion occurred in the aftermath of an adversary proceeding, filed by the Trustee, seeking the consolidation of APP with its parents and affiliates, and proposing a settlement of the Cost Controls claim. The Court ordered Silver-man to negotiate with APP and its affiliates. These negotiations resulted in the Secured Guarantee and Subordination Agreement, approved November 26, 1997. In this Agreement, APP, its affiliates, and some of its subordinated lenders (called “Subordinated Guarantors”), including Tracar, pledged their assets for the payment of the allowed claims, subordinated their claims to APP’s other creditors, and “irrevocably consented] to the continuing jurisdiction of the United States Bankruptcy Court ... in connection with any dispute arising hereunder, and waive[d] any right to object to such jurisdiction on the basis of
 
 forum non conveniens,
 
 or otherwise.” Subordination Agreement § 12(g).
 

 Shortly after the effective date of the Subordination Agreement, the Trustee reported to the Court that APP and the other guarantors had breached the Agreement in several respects. The Court held extensive hearings, and concluded that they had breached the Agreement by, among other things, diverting profitable business to an affiliate. On June 19, 1998, the Court granted the Trustee’s request to substantively consolidate APP and the Subordinated Guarantors, including Tra-car.
 

 On June 24, 1998, the Bankruptcy Court “enlarged the Trustee’s powers to that of a full operating trustee,” in light of evidence of rampant fraud and diversion of assets that had been uncovered during the hearings of the previous few months. The parties seem to agree that at this point, the Trustee had powers equivalent to those of a trustee appointed pursuant to 11 U.S.C. § 721. No appeal was taken from this order (“the June 24 order”).
 

 Silverman sought and received permission to sell the assets of the consolidated debtors. In the course of hearings in the Bankruptcy Court concerning the sale, questions arose as to the validity of Tra-car’s claims. The Court extended the Trustee’s time to object to claims. The Trustee then moved to expunge Tracar’s claims as fraudulent. After holding hearings, the Court granted the motion, finding that the loan documents supporting Tra-
 
 *91
 
 car’s claims were fabricated by one of APP’s principals.
 

 Challenges to the Trustee.
 
 APP twice filed papers challenging the Trustee. In May 1997, before the first expansion of the Trustee’s powers, APP contended that, because of changed circumstances, the Trustee was no longer necessary. In January 1998, after the initial expansion of the Trustee’s powers, APP sought the Trustee’s removal for alleged malfeasance. Tracar, the Appellee in the pending appeal, participated in the hearing on this second application. The Bankruptcy Court rejected both challenges, neither of which was appealed.
 

 On May 17, 1999, eleven months after the June 24 order giving Silverman full trustee powers, Tracar filed a motion with the Bankruptcy Court challenging the Court’s authority to appoint the Trustee. Judge Eisenberg denied the motion. Tra-car appealed to the District Court, which reversed the Bankruptcy Court. Judge Hurley concluded that the Bankruptcy Court had tried to “sidestep” section 1104(a) of the Bankruptcy Code, which authorizes the appointment of a trustee “[a]t any time after the commencement of the case but
 
 before
 
 confirmation of a plan.” 11 U.S.C. § 1104(a) (emphasis added). He noted that section 1123(b)(3)(B) of the Code authorizes the insertion of a clause in the reorganization plan permitting the appointment of a trustee, but that APP’s Plan lacks such a clause. Judge Hurley rejected the Bankruptcy Court’s reliance on section 105 because of what he understood was a negative implication of section 1104(a). Finally, the District Court pointed out that a bankruptcy judge is not powerless to fight post-confirmation fraud: a bankruptcy judge can dismiss the bankruptcy proceeding, convert it into a Chapter 7 proceeding pursuant to 11 U.S.C. § 1112(b)(8) (after which a Chapter 7 trustee can be appointed), or modify the Plan under 11 U.S.C. § 1127 to authorize a trustee under section 1123(b)(3)(B).
 

 Noting that this case implicates several controlling issues of law of first impression, and expressing doubts about the impact of the decision on the future administration of APP’s estate, Judge Hurley certified his ruling to this Court for interlocutory appeal under 28 U.S.C. § 1292(b), and stayed his order pending appeal.
 

 Silverman then filed in this Court both a petition for permission to appeal under section 1292(b) and a notice of appeal under 28 U.S.C. § 1291. We denied the petition for permission to appeal, but subsequently expedited the pending appeal, which was properly initiated by Silver-man’s notice of appeal.
 

 Discussion
 

 The parties primarily join issue on whether a bankruptcy court has the authority to appoint a Chapter 11 trustee after a plan has been confirmed, in the absence of a specific reservation of such authority in the plan. This is a substantial question. As one leading commentator has noted, “The extent to which the bankruptcy court can or should exercise post-confirmation jurisdiction is an issue that has long troubled the bankruptcy court system.”
 
 Collier on Bankruptcy
 
 ¶ 1142.04, at 1142-6 (Lawrence P. King ed., 15th ed.2000).
 
 [3]
 
 We do not reach that
 
 *92
 
 question, however, because we encounter a threshold issue as to whether Tracar is precluded from now challenging the authority of the Trustee because it failed to appeal from the June 24 order of the Bankruptcy Court that accorded the Trustee full powers.
 

 If we were concerned with a preconfirmation appointment of a trustee, there would be a fair issue whether a party that did not appeal at the time of appointment is precluded from challenging the appointment thereafter by appealing from the denial of a subsequent motion to vacate the appointment. Normally, the failure to take an interlocutory appeal does not preclude an appeal from a final judgment.
 
 See Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.),
 
 226 F.3d 160, 163-65 (2d Cir.2000); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
 
 Federal Practice and Procedure
 
 § 4433, at 307-08 (1st ed. 1981
 
 &
 
 Supp.2001) (“The opportunity for an earlier appeal is intended to protect the appellant, not to forfeit the right to later review.”). However, some orders of bankruptcy courts, entered in the course of Chapter 11 proceedings prior to confirmation, are final judgments, which, if not timely appealed (or timely challenged under Fed.R.Civ.P. 60(b)), are entitled to
 
 res judicata
 
 effect.
 
 See, e.g., Hendrick v. H.E. Avent,
 
 891 F.2d 583, 585-87 (5th Cir.1990) (sale of asset);
 
 Gekas v. Pipin (In re Met-L-Wood Corp.),
 
 861 F.2d 1012, 1016-18 (7th Cir.1988) (same). A pre-confirmation order appointing a trustee has been deemed “final” for purposes of an appeal,
 
 see, e.g., Cajun Electric Power Cooperative, Inc. v. Central Louisiana Electnc Co. (In re Cajun Electric Power Cooperative, Inc.),
 
 69 F.3d 746, 747-48 (5th Cir.1995);
 
 In re Plaza de Diego Shopping Center, Inc.,
 
 911 F.2d 820, 826-27 (1st Cir.1990), under the “flexible standard of finality” applicable in bankruptcy proceedings,
 
 Dicola v. American Steamship Owners Mutual Protection and Indemnity Ass’n, Inc. (In re Prudential Lines),
 
 59 F.3d 327, 331 (2d Cir.1995);
 
 see also United States Trustee v. Bloom (In re Palm Coast, Matanza Shores Ltd. Partnership),
 
 101 F.3d 253, 256 (2d Cir.1996) (bankruptcy court order approving trustee’s appointment of real estate consultant deemed final and appealable). If an appeal would lie and is not pursued, there would be a substantial argument that a party with an opportunity to appeal would be precluded from a subsequent challenge.
 
 Cf. Kobrin v. University of Minnesota,
 
 121 F.3d 408, 413 (8th Cir.1997) (failure to object promptly to appointment of special master waives objection).
 

 However the matter might be resolved in the pre-confirmation stage, the preclusion issue we face arises post-confirmation. The confirmation of a plan in a Chapter 11 proceeding is an event comparable to the entry of a final judgment in an ordinary civil litigation.
 
 Trulis v. Barton,
 
 107 F.3d 685, 691 (9th Cir.1995);
 
 First Union Commercial Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enterprises, Inc.),
 
 81 F.3d 1310, 1315 (4th Cir.1996). Supplemental orders entered post-confirmation are analogous to orders entered post-judgment in ordinary civil litigation, which are generally appealable,
 
 see Isidor Paiewonsky Associates v. Sharp Properties, Inc.,
 
 998 F.2d 145, 150 (3d Cir.1993), unless they are “ministerial” or
 
 *93
 
 “administrative,”
 
 id.,
 
 such as post-judgment discovery orders,
 
 Central States, Southeast and Southwest Areas Pension Fund v. Express Freight Lines, Inc.,
 
 971 F.2d 5, 6 (7th Cir.1992). In this Circuit, “substantive” post-judgment orders issued in “cases involving a protracted remedial phase” have readily been deemed appeal-able.
 
 See United States v. Yonkers Board of Education,
 
 946 F.2d 180, 183 (2d Cir.1991). “It is sometimes appropriate that the requirement of finality be given a practical rather than a technical construction .... And this is especially so when supplementary post-judgment orders are involved because the policy against and the probability of avoiding piecemeal review are less likely to be decisive after judgment than before.”
 
 Ohntrup v. Firearms Center, Inc.,
 
 802 F.2d 676, 678 (3d Cir.1986) (internal quotations marks omitted).
 

 We think that a post-confirmation ruling to appoint a trustee has the significance to warrant an appeal, perhaps even more clearly than in the pre-confirmation context.
 
 Cf. Gary W. v. State of Louisiana,
 
 601 F.2d 240, 243-44 (5th Cir.1979) (post-judgment order appointing special master appealable as modification of injunction).
 
 But cf. Thompson v. Enomoto,
 
 815 F.2d 1323, 1327 (9th Cir.1987) (post-judgment order appointing special master not appealable). That does not necessarily mean, however, that a party that had the opportunity to appeal an order appointing a trustee will be precluded from later challenging the ruling for lack of an immediate appeal.
 
 See
 
 Wright
 
 et al.,
 
 § 4433, at 308 n. 6 (“In special settings ... it may be concluded that the purpose of permitting interlocutory appeal is to achieve finality; if so, failure to appeal should result in preclusion.”). Although we have accorded preclusive effect to Bankruptcy Court rulings that were available for appeal,
 
 see Corbett v. MacDonald Moving Services, Inc.,
 
 124 F.3d 82, 91-92 (2d Cir.1997), we think it inadvisable to attempt to fashion a rule of preclusion for all appealable post-confirmation rulings. Instead, we think that the issue of preclusion should turn on the considerations that favor and oppose preclusion for the particular type of order at issue here.
 

 Favoring preclusion is the risk to the orderly consummation of the plan that would be created by permitting the trustee’s authority to be challenged long after his appointment. The order giving the Trustee full trustee powers is unquestionably a significant order. Armed with such powers, the Trustee can take a broad range of actions and has a legal status entitling him to request Bankruptcy Court approval for many other actions. If a challenge to the Trustee’s authority can be made long after his appointment, the validity of these actions will be placed in doubt. Then, if it is ultimately determined that the Trustee was invalidly appointed, the courts will have to determine whether to undo all of the Trustee’s actions, or only those where substantial rights would not be prejudiced by undoing the Trustee’s actions, or only the action challenged by the party attempting to appeal the Trustee’s appointment.
 
 Cf. In re Continental Airlines,
 
 91 F.3d 553, 559 (3d Cir.1996) (in banc) (considering, under rubric of “equitable mootness,” whether substantial consummation of plan justified dismissal of appeal);
 
 In re Chateaugay Corp.,
 
 988 F.2d 322, 325 (2d Cir.1993) (same);
 
 cf. also Cajun Electric Power,
 
 69 F.3d at 748 (speculating that relief for improper pre-confir-mation appointment of trustee would be to vacate reorganization plan). The resulting uncertainties would risk serious interference with the orderly and expeditious consummation of a confirmed plan of reorganization.
 

 
 *94
 
 Opposing preclusion is the risk of precipitating extra appeals. If some post-confirmation orders are given preclusive effect against parties who could have but did not appeal them, even though the orders had no immediate effect on the rights of such parties, some parties will feel obliged to appeal some orders only to protect their position in the event that the order is subsequently applied to affect their rights. Judge Easterbrook has expressed this concern in counseling against according preclusive effect to unappealed interim orders that are appealable by virtue
 
 of 28
 
 U.S.C. § 158(d).
 
 See Reichman v. United States Fire Insurance Co. (In re Kilgus),
 
 811 F.2d 1112, 1116 (7th Cir.1987). In Judge Easterbrook view, “the failure to appeal an order in a bankruptcy case must forfeit later review only when the order would have been final under the more stringent standards of 28 U.S.C. § 1291.”
 
 Id.
 
 Even if we were to accept that view, a post-confirmation order appointing a trustee is not an interim order, and, as the equivalent of a substantive post-judgment order, would have been appealable under ordinary civil litigation standards.
 

 Weighing these competing considerations involves predictions about the future, as to which judges have no special competence. Nevertheless, a choice must be made, and we regard the risks of extra appeals in the post-confirmation context to be minimal and of far less concern than the uncertainties that would be created by permitting long-delayed challenges to significant post-confirmation orders. Most post-confirmation orders that have no immediate effect on a party sufficient to precipitate an immediate appeal are unlikely ever to have such an effect, and it seems unlikely that unaffected parties will bother with protective appeals. On the other hand, the rare post-confirmation order that has a significant potential for affecting the rights of parties should be challenged promptly (if at all) in order to avoid disruption of the plan’s consummation. An unappealed post-confirmation order appointing a trustee should have preclusive effect, just as an unappealed order confirming a plan,
 
 see Multnomah County v. Ivory (In re Ivory),
 
 70 F.3d 73, 75 (9th Cir.1995) (bankruptcy court’s confirmation of plan is final order that if not appealed, cannot be attacked a few months later in same bankruptcy proceeding, even for lack of subject matter jurisdiction);
 
 Republic Supply Co. v. Shoaf,
 
 815 F.2d 1046, 1050 (5th Cir.1987) (same). The “finality interests” of
 
 res judicata
 
 “are particularly important in the bankruptcy context, where numerous contending claims and interests are gathered, jostle, and are determined and released.”
 
 Corbett,
 
 124 F.3d at 91.
 

 Tracar contends that it cannot be precluded from challenging the Bankruptcy Court’s authority to appoint a post-confirmation trustee because, it asserts, the Court lacked “jurisdiction” to make such an appointment. Although Judge Hurley also said that “jurisdiction” to make the appointment was lacking, we do not think that the issue of authority implicates subject-matter jurisdiction, the absence of which can be raised at any time,
 
 see Bender v. Williamsport Area School District,
 
 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986), although not on a collateral attack by a party with a prior opportunity to litigate the issue,
 
 see Insurance Corp. of Ireland v. Compagnie des Bauxites,
 
 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (“A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, reopen that question in a collateral attack....”).
 

 Subject-matter jurisdiction concerns a court’s authority to make any ruling on the merits of an issue.
 
 See Black’s Law Dic
 
 
 *95
 

 tionary
 
 857 (7th ed.1999) (defining subject-matter jurisdiction” as “the extent to which a court can rule on the conduct of persons or the status of things”). The issue on the merits here is whether the Bankruptcy Code permits the appointment of a post-confirmation trustee. Whether or not it does, a bankruptcy court, with unquestioned subject-matter jurisdiction over a bankruptcy proceeding, see 28 U.S.C. § 1334;
 
 see also id.
 
 §§ 151, 157, has subject-matter jurisdiction to decide the statutory issue.
 
 Cf. Bell v. Hood,
 
 327 U.S. 678, 682-84, 66 S.Ct. 773, 90 L.Ed. 939 (1946) (non-frivolous federal statutory issue sufficient to invoke district court’s federal question jurisdiction). The distinction between a bankruptcy court’s jurisdiction and its authority or power to take a particular action was carefully articulated by the Ninth Circuit in
 
 American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.),
 
 885 F.2d 621 (9th Cir.1989). A Bankruptcy Court had ruled that it lacked both jurisdiction and power under section 105 of the Code to extend an injunction beyond the confirmation of a plan of reorganization. The Ninth Circuit explained:
 

 Subject matter jurisdiction and power are separate prerequisites to the court’s capacity to act. Subject matter jurisdiction is the court’s authority to entertain an action between the parties before it. Power under section 105 is the scope and forms of relief the court may order in an action in which it has jurisdiction.
 

 Id.
 
 at 624. The Court upheld the Bankruptcy Court’s jurisdiction, but agreed that the Bankruptcy Court lacked power to continue the injunction post-confirmation.
 
 Id.
 
 at 624-27.
 

 Whether a bankruptcy court has the authority in a Chapter 11 proceeding to make the post-confirmation appointment of a trustee is a substantial issue, but it is not an issue of subject-matter jurisdiction.
 

 Conclusion
 

 The judgment of the District Court is reversed, and the case is remanded.
 

 [1]
 

 . APP, when pressed by the Bankruptcy Court, conceded that it was well within the Court’s powers to appoint an "independent consultant” paid on an hourly basis to review the debtor's acts and report back to the Court, but stressed that "that's a far cry from appointing an operating trustee.” APP did not at that point identify what it viewed as differences in the powers of a consultant and a trustee that would make the appointment of a trustee objectionable, arguing instead that APP would have difficulty obtaining a bond if it were subject to a trustee’s authority, and that the appointment of an operating trustee would "spread panic among employees.” Judge Eisenberg concluded that it was "clear that a trustee type person whether you call it a trustee or an independent consultant or a responsible person is necessary to oversee the operation of this business.”
 

 [2]
 

 . The order appointing Silverman as "Chapter 11 trustee” noted specifically that he "shall have all the rights, duties and powers vested in a trustee appointed under Title 11 of the United States Code, including authorization to take possession of the debtor’s property, to operate and manage the debtor’s business pursuant to 11 U.S.C. § 1108, and to perform all of the duties of [a] trustee prescribed in 11 U.S.C. § 1106(a)
 
 as set forth on the record on April 9, 1997.”
 
 The emphasized words were handwritten on the order, and were apparently intended to reflect the limited authority of the trustee, as discussed during oral argument before the Bankruptcy Court.
 

 [3]
 

 . In addition to the District Court’s decision in the pending appeal, two courts have also ruled against the authority to appoint a post-confirmation trustee.
 
 See In re Modern Steel Treating Co.,
 
 130 B.R. 60, 65-66 (Bankr.N.D.Ill.1991), aff'
 
 d,
 
 1992 WL 82966 (N.D.Ill. Apr. 1, 1992);
 
 In re Schultz,
 
 69 B.R. 629, 631 (D.S.D.1987) (rejecting appointment of trustee contemporaneously with confirmation of plan),
 
 cause dismissed,
 
 837 F.2d 481 (8th Cir.
 
 *92
 

 1987).
 
 On the other hand, in addition to the Bankruptcy Court's decision in the pending appeal approving appointment of a post-confirmation trustee, one bankruptcy court has appointed a post-confirmation officer with what appears to be the combined authority of a trustee and a supervisor.
 
 In re Record and Tape Place, Inc.,
 
 No. 81-1665 L, 1983 Bankr.LEXIS 6461, at *12->::19 (Bankr.D.Mass. Apr.7, 1983).