In re SUNBRITE CLEANERS,
INC., Debtor.

ICCO Design/Build, Inc., Appellant,

v.

Sunbrite Cleaners, Inc.,
Debtor–Appellee.

No. 5:01–CV–1742.

United States District Court,
N.D. New York.

Sept. 30, 2002.

Melvin & Melvin, LLP, Louis Levine, of counsel, Syracuse, NY, for ICCO Design/Build, Inc.

Office of Joseph A. Camardo, Jr., Robert Louis Riley, of counsel, Auburn, NY, for Sunbrite Cleaners, Inc.

## *MEMORANDUM—DECISION & ORDER*

HURD, District Judge.

### I. *INTRODUCTION*

ICCO Design/Build Inc. ("ICCO") appeals from the Bankruptcy Court's October 17, 2001, Order granting its motion to reopen the debtor's, Sunbrite Cleaners, Inc. ("debtor"), reorganization case pursuant to 11 U.S.C. § 350(b), and denying its motion to determine its claim pursuant to 11 U.S.C. § 502(b) for lack of subject matter jurisdiction. *See* Mem.-Dec., Findings of Fact, Conclusion of Law & Order, No. 96–62589, Oct. 17, 2001 (Gerling, C.B.J.). For the following reasons, the decision of the Bankruptcy Court is affirmed in its entirety.

### II. *FACTS*

Debtor and ICCO entered into a construction contract whereby ICCO was to rebuild debtor's dry-cleaning business facility. As a result of a disagreement regarding compensation due ICCO under the contract, ICCO sued debtor in state court.

While the state court action was pending, on May 28, 1996, debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174. Debtor's petition listed ICCO as an unsecured, nonpriority creditor holding a disputed claim. On July 2, 1996, ICCO filed a proof of claim in debtor's bankruptcy case in the amount of

$30,711.53. Because ICCO's claim was substantially larger than other claims of unsecured creditors, ICCO arguably was in a position to defeat debtor's reorganization plan pursuant to 11 U.S.C. § 1126.

On October 16, 1996, debtor filed its Chapter 11 Plan of Reorganization ("Plan"). Although the Chapter 11 Disclosure Statement filed on that same date acknowledged that debtor and ICCO were involved in state court litigation, and that ICCO had a contingent, disputed claim in the amount of $30,711.00, the Plan made no specific reference to the payment of ICCO's claim and appeared to have excluded it from the Plan's treatment of unsecured creditors. Accordingly, ICCO voted to reject the plan.

On January 27, 1997, debtor filed a First Amended Chapter 11 Disclosure Statement and First Amended Chapter 11 Plan ("First Amended Plan"). As is pertinent hereto, the First Amended Disclosure Statement expressly provided for the continued litigation of ICCO's claim in state court. The First Amended Plan, however, did not alter its treatment of ICCO's claim.

In response to ICCO's vote to reject the Plan, debtor moved to disallow ICCO's claim for voting purposes by having it estimated at a value of $1.00. Before debtor's motion was decided by the Bankruptcy Court, ICCO changed its vote and accepted the First Amended Plan. The reason for this change is the subject of dispute. According to ICCO's counsel, he agreed to vote in favor of the First Amended Plan provided that it was revised to specifically provide for continuing the state court action. Debtor's attorney admits that he discussed the continuation of the state court litigation, but maintains that ICCO stipulated to reduce its claim to $1.00 solely for the purpose of voting for or against the First Amended Plan. ICCO's attorney denies this.

On March 7, 1997, ICCO filed an amended ballot accepting the First Amended Plan. The Ballot lists ICCO's claim as $30,711.00, rather than $1.00. The First Amended Plan was never amended to provide for the continued litigation of ICCO's claims in state court.

On April 25, 1997, the Bankruptcy Court entered an Order Confirming Debtor's First Amended Disclosure Statement and First Amended Plan. On November 14, 1997, a Report of Substantial Consummation was filed and a Final Decree Closing the Case was entered on November 19, 1997.

During the bankruptcy proceedings, the state court litigation remained pending. In January 2001, debtor's attorney in the state court litigation advised ICCO's attorney that debtor intended to move for summary judgment on the ground that the confirmed First Amended Plan served to discharge ICCO's claim. ICCO disagreed contending that its claim was not discharged, but that the First Amended Plan, read together with the First Amended Disclosure Statement, contemplated that ICCO's claim would be litigated in state court. In an effort to resolve this issue, ICCO moved to reopen debtor's bankruptcy case and determine its claim.

The Bankruptcy Court reopened debtor's Chapter 11 reorganization case, but found that the First Amended Plan did not provide for post-consummation jurisdiction to resolve the instant dispute, and therefore, it did not have subject matter jurisdiction. The Bankruptcy Court further held that ICCO failed to provide sufficient grounds to modify debtor's substantially consummated First Amended Plan under Fed.R.Civ.P. 60(b)(6).

ICCO now appeals the Bankruptcy Court's October 17, 2001, Memorandum–

Decision, Findings of Fact, Conclusions of Law, and Order.

## III. *STANDARD OF REVIEW*

■■■ In reviewing a bankruptcy court's decision, a district court applies the clearly erroneous standard to conclusions of fact and *de novo* review to conclusions of law. *In re Manville Forest Products Corp.*, 209 F.3d 125, 128 (2d Cir.2000); *In re Petition of Bd. of Directors of Hopewell Int'l Ins. Ltd.*, 275 B.R. 699, 703 (Bankr. S.D.N.Y.2002); Fed. R. Bankr.P. 8013. Rulings pursuant to Fed.R.Civ.P. 60 are reviewed for an abuse of discretion. *In re Lawrence*, 293 F.3d 615, 623 (2d Cir.2002).

## IV. *DISCUSSION*

On Appeal, ICCO contends that: (1) the Bankruptcy Court had subject matter jurisdiction to decide ICCO's motion to determine its claim pursuant to the terms of the 28 U.S.C. § 1334 and the debtor's plan; (2) regardless of the terms of debtor's plan, the Court could have entertained ICCO's motion pursuant to Fed.R.Civ.P. 60(b) and Fed. R. Bankr.P. 9024; (3) debtor should be estopped from acting contrary to the terms of the Disclosure Statement; and (4) the Bankruptcy Court should have reformed the Plan "to make it state what it should have stated when it was originally confirmed." (Appellant's Mem. Law at 16.)

### A. *Subject Matter Jurisdiction*

The outer boundaries of a district court's bankruptcy jurisdiction are governed by 28 U.S.C. § 1334. Under that section, district courts have subject matter jurisdiction of "proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. Bankruptcy courts are statutorily designated as a "unit of the district court." 28 U.S.C. § 151. Pursuant to 28 U.S.C. § 157(a),

district courts may refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy courts. *See Presidential Gardens Assocs. v. United States Ex Rel Sec. of Housing & Urban Dev.*, 175 F.3d 132, 142 (2d Cir.1999); *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir.1994); *In re American Hardwoods, Inc.*, 885 F.2d 621, 623 (9th Cir.1989).

Courts have imposed practical limitations upon the jurisdiction granted by 28 U.S.C. § 1334, particularly with respect to post-confirmation issues. *See, e.g., In re Murray*, 214 B.R. 271, 277 (Bankr.D.Mass. 1997); *In re Almac's, Inc.*, 202 B.R. 648, 656 (D.R.I.1996). This is because

> [t]he basic theory of reorganization proceedings is that the debtor . . . has been rehabilitated by the plan so that it can carry on its business. The corollary of this is that it and its creditors should work out their mutual rights and duties in the ordinary tribunals and should not forever continue under tutelage of the bankruptcy court.

*Butler v. Greater Pythian Temple Ass'n of New York*, 205 F.2d 621, 622 (2d Cir.1953); *Towers Hotel Corp. v. Lafayette Nat'l Bank of Brooklyn in N.Y.*, 148 F.2d 145, 148 (2d Cir.1945); *see also* William Norton, Jr., 4 *Norton Bankruptcy Law and Practice 2d* § 95:6 (2002) ("Although the statutes do not expressly provide for an automatic termination, or even reduction, in the basis and ambit of Bankruptcy Court jurisdiction post confirmation, the nature and effect of confirmation mandate a significant reduction in the post confirmation jurisdiction of the Bankruptcy Court.").

■■■ Thus, in the Second Circuit, as a general rule, a bankruptcy court's jurisdiction extends until the debtor's plan of reorganization has been confirmed. *In re Johns–Manville Corp.*, 7 F.3d 32, 34 (2d

Cir.1993). "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001); *Presidential Gardens Assocs.*, 175 F.3d at 142 (jurisdiction "does not normally survive the dismissal of the underlying bankruptcy proceeding"); *In re Fairfield Cmtys., Inc.*, 142 F.3d 1093, 1095 (8th Cir. 1998); *In re Johns–Manville Corp.*, 7 F.3d at 34; *see also Southwest Marine, Inc. v. Danzig*, 217 F.3d 1128, 1140 (9th Cir.2000), *cert. denied*, 532 U.S. 1007, 121 S.Ct. 1733, 149 L.Ed.2d 658 (2001). Although the extent of post-confirmation jurisdiction is subject to great debate, *see, e.g., Collier on Bankruptcy*, ¶ 1142.04, at 1142-6—1142-7 (Lawrence P. King ed., 15th ed.2000); *In re Gordon Sel-Way, Inc.*, 270 F.3d 280, 288 (6th Cir.2001), the Second Circuit has clearly stated that "[a] bankruptcy court retains post-confirmation jurisdiction only to the extent provided in the plan of reorganization." *In re Johns–Manville Corp.*, 7 F.3d at 34; *see also In re U.S.H. Corp. of New York*, 280 B.R. 330, 334 (Bankr. S.D.N.Y.2002); *In re Almac's, Inc.*, 202 B.R. at 656 ("[A]lthough parties may not create jurisdiction by provision in a con-

firmed plan where it does not otherwise exist, many courts find the retention of jurisdiction to be a prerequisite to the adjudication of a post confirmation claim in bankruptcy court.").[1]

Here, debtor's plan was confirmed on April 25, 1997. The bankruptcy case has been closed since 1997. In light of the explicit holding of *Johns–Manville*, the Bankruptcy Court properly looked to the terms of the First Amended Plan to ascertain the scope of its post-confirmation jurisdiction.

■ The Bankruptcy Court also properly found that the language of the First Amended Plan did not extend jurisdiction over ICCO's motion to determine its claim against debtor.[2] The first sentence of Article VII of the First Amended Plan unambiguously provides that the Bankruptcy Court's jurisdiction would extend beyond confirmation and terminate upon substantial consummation. This sentence serves to set the limits on that Court's jurisdiction. The second sentence defines under what circumstances the Bankruptcy Court may find the First Amended Plan to have been substantially consummated thereby terminating jurisdiction. Reading Article VII together in its entirety, the ensuing sentences define the scope of the Bank-

---

1. Notwithstanding the provisions of the plan of reorganization, subject matter jurisdiction may not extend beyond the statutory authority contained in 28 U.S.C. § 1334. *In re U.S.H. Corp. of New York*, 280 B.R. at 334.

2. The First Amended Plan provides, in relevant part, as follows:

The [Bankruptcy] Court will retain jurisdiction until there is substantial consummation of the Plan. Assuming the other conditions of 11 U.S.C. Section 1101(2) are satisfied, the Court may find a Plan to be substantially consummated at the time the first payment is made pursuant to the Plan.

The Court shall retain jurisdiction for the following purposes:

(a) To consider any modifications of the Plan pursuant to Section 1127 of the Code and/or any modifications of the Plan after substantial consummation thereof;

(b) To hear and determine:

All controversies, suits and disputes, if any, as may arise between or among the holders of any Class of Claims and the debtor;

(1) All causes of action which may exist on behalf of the debtor;

(2) Applications for allowance of compensation and objections to claims;

(3) All controversies as provided by the Order confirming the Plan; and

(4) Any and all pending applications, adversary proceedings and litigated matters.

ruptcy Court's jurisdiction during the period between confirmation and substantial consummation.[3] Because nothing in Article VII of the First Amended Plan contemplates the exercise of jurisdiction over post-substantial consummation events, the Bankruptcy Court lacked jurisdiction to entertain ICCO's motion.

ICCO argues that the Second Circuit's decision in *In re American Preferred Prescription, Inc.*, 255 F.3d 87 (2d Cir.2001), dictates a contrary result. In that case, a creditor challenged the bankruptcy court's authority to appoint a trustee post confirmation. The Second Circuit stated that "[t]he issue on the merits here is whether the Bankruptcy Code permits the appointment of a post-confirmation trustee. Whether or not it does, a bankruptcy court, with unquestioned subject-matter jurisdiction over a bankruptcy proceeding, *see* 28 U.S.C. § 1334; *see also id.* §§ 151, 157, has subject-matter jurisdiction to decide the statutory issue." 255 F.3d at 95. ICCO contends that this statement necessarily means that "the Bankruptcy Court must retain ... jurisdiction after the confirmation of a Chapter 11 plan ... even if the plan does not expressly confer such jurisdiction." (Appellant's Mem. Law at 9.)

While the Second Circuit's decision in *In re American Preferred Prescription* does not explicitly explain why the bankruptcy court had "unquestioned subject-matter jurisdiction," it can readily be reconciled with the jurisdictional limit imposed by *In re Johns–Manville* (i.e., that "[t]he bankruptcy court's post-confirmation jurisdiction is ... defined by reference to the Plan"). In *In re American*

*Preferred Prescription,* the Second Circuit discussed the confirmed plan's "retention of jurisdiction" section. 255 F.3d at 89. The Second Circuit noted that although the plan "does not contain a clause explicitly authorizing the court to appoint a trustee," it did "set out a broad list of reserved tasks and powers, including the power 'to make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof.'" *Id.* (quoting the Plan at Article 10.1(q)). It can reasonably be inferred from *In re American Preferred Prescription* that the plan's retention of jurisdiction section was sufficiently broad to encompass the post-confirmation appointment of a trustee. In light of the apparent efforts by the debtor to avoid its bankruptcy obligations, the post-confirmation appointment of a trustee was necessary and appropriate to carry out the provisions of the plan and enforce the provisions thereof. Thus, the bankruptcy court in that case had jurisdiction to appoint the trustee because such a power was retained in the plan.

Here, the First Amended Plan contains no such broad retention of jurisdiction provisions, and thus, for the reasons previously discussed, the Bankruptcy Court properly concluded that it lacked jurisdiction over ICCO's motion.

**B. Fed.R.Civ.P. 60/Fed. R. Bankr.P. 9024**

■ ICCO next contends that the Bankruptcy Court had authority pursuant to Fed.R.Civ.P. 60 and Fed. R. Bankr.P. 9024 to determine "whether Debtor must do

---

**3.** The fact that Article VII(a) of the Plan expressly provides for a circumstance when the court could retain jurisdiction after substantial consummation (even though such a provision likely is unenforceable, *see* 11 U.S.C. § 1127(b)) further evinces that the other portions of Article VII were not intended to extend jurisdiction beyond substantial consummation.

what it said it would do in its disclosure statement." (Appellant's Mem. Law at 12.) In support of its contention that the Bankruptcy Court should have granted relief under Rule 60, ICCO maintains that "[b]ecause of the complexity of the issues in this motion, which are of a purely bankruptcy nature, it would be manifestly unfair to ICCO to relegate to a state court a determination of whether ICCO's claim had been discharged."

■■■ The Bankruptcy Court did not abuse its discretion in finding that ICCO failed to sustain its burden under Rule 60(b)(6) of presenting sufficient grounds upon which to modify debtor's substantially consummated First Amended Plan. As previously noted, ICCO's concern is whether debtor is obligated to litigate ICCO's contract claim in state court pursuant to the terms of the First Amended Disclosure Statement or First Amended Plan. "Under the Bankruptcy Code, a confirmed plan of reorganization acts like a contract that is binding on all of the parties, debtor and creditors alike." *In re Varat Enters., Inc.,* 81 F.3d 1310, 1317 (4th Cir.1996); *see In re Victory Markets, Inc.,* 221 B.R. 298, 303 (2d Cir. BAP 1998). Because contract interpretation is an issue of state law, *see In re Victory Markets, Inc.,* 221 B.R. at 303, the state courts are perfectly well-suited to interpret the First Amended Plan. Moreover, whether a claim has been discharged is a defense that can be raised in post-bankruptcy litigation, whether before a federal district court or a state court. *See Pettibone Corp. v. Easley,* 935 F.2d 120, 123 (7th Cir.1991); *Solow Bldg. Co., LLC v. ATC Assocs., Inc.,* 175 F.Supp.2d 465 (E.D.N.Y.2001); *In re Mako, Inc.,* 120 B.R. 198, 202 (Bankr. E.D.Okl.1990) ("The Bankruptcy Court generally retains concurrent jurisdiction with an appropriate State Court to interpret a Chapter 11 Plan, post-confirma-

tion."); *see also* Fed.R.Civ.P. 8(c); N.Y. C.P.L.R. § 3018(b). State courts are fully capable of interpreting a confirmed plan to determine whether a particular claim has been discharged. *See In re McGhan,* 288 F.3d 1172, 1180 (9th Cir.2002); *In re Pavelich,* 229 B.R. 777, 783 (9th Cir. BAP 1999) ("With respect to the discharge itself, state courts have the power to construe the discharge and determine whether a particular debt is or is not within the discharge. Indeed, discharge in bankruptcy is a recognized defense under state law."); *Fallick v. Kehr,* 369 F.2d 899, 902 (2d Cir. 1966); *Ciavarella v. Salituri,* 153 F.2d 343, 344 (2d Cir.1946). New York's state courts frequently determine whether a particular claim has been discharged. *See, e.g., Bogdan & Faist, P.C. v. CAI Wireless Sys., Inc.,* 295 A.D.2d 849, 745 N.Y.S.2d 92 (3d Dep't 2002); *Prestige Caterers v. Kaufman,* 290 A.D.2d 295, 736 N.Y.S.2d 335 (1st Dep't 2002). Thus, contrary to its argument, ICCO will not suffer any grave injustice by litigating this issue before the state court.

### C. *Estoppel*

ICCO next contends that "even if the terms of the disclosure statement are not binding on the Debtor contractually ... then the disclosure statement still will be binding on the Debtor pursuant to the doctrine of estoppel." (Appellant's Mem. Law at 14.) This issue need not now be addressed because it is more appropriate for the state court in determining the Plan's applicability to ICCO's claim pursuant to state law principles.

### D. *Reformation*

■■■ Lastly, ICCO maintains that the Bankruptcy Court was empowered to reform the Plan as an equitable remedy to make it conform with "what [the Plan] should have stated when it was originally confirmed." (Appellant's Mem. Law at

16.) Upon reviewing the Bankruptcy Court's decision and the papers submitted to the Bankruptcy Court concerning the subject motion, it does not appear that this argument was made to the Bankruptcy Court. In any event, reformation is not appropriate under the circumstances.

██ Reformation is a creature of equity, and under the circumstances presented, is not warranted. First, ICCO had ample opportunity to review and challenge the First Amended Plan. ICCO was well aware of the First Amended Plan's terms at the time it changed its vote from rejection to acceptance. In light of debtor's purported agreement to amend the First Amended Plan to provide for the continued litigation of the contract claim in state court, prudence would have dictated that ICCO ensure that the First Amended Plan was so amended. ICCO, however, failed to do so. Instead, it sat by and did nothing. ICCO did not seek to reduce the alleged agreement to writing. Similarly, ICCO did nothing to ensure that debtor filed a revised First Amended Plan. Significantly, well aware of the terms of the First Amended Plan and its lack of reference to its claims against debtor, ICCO did not object to, or appeal, the April 25, 1997, Order confirming the First Amended Plan.

██ Second, " '[i]n the proper circumstances, mutual mistake or fraud may furnish the basis for reforming a written agreement.' " *Collins v. Harrison Bode*, 303 F.3d 429, 434 (2d Cir.2002) (quoting *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 573, 498 N.Y.S.2d 344, 489 N.E.2d 231 (N.Y.1986)).

> Because the remedy of reformation presents the danger that a party, having agreed to a written contract that turns out to be disadvantageous, will falsely claim the existence of a different, oral contract ... the New York courts have sharply limited the remedy of reformation both procedurally and substantive-

ly. . . . The proponent of reformation must show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties.

*Id.* (internal quotations and citations omitted). ICCO has failed to meet this burden. ICCO does not make any allegation of fraud and does not establish circumstances suggesting a mutual mistake of fact.

Even assuming ICCO could demonstrate fraud or mutual mistake of fact, it has failed to demonstrate "in no uncertain terms ... exactly what was agreed upon by the parties." Although debtor admits discussing the continuation of the state court litigation, it is unclear what, if anything, the parties actually agreed on. For example, ICCO's attorney contends that in exchange for ICCO's agreement to file a new ballot voting to accept debtor's plan, debtor's attorney "assured me that he would amend the debtor's plan to include provisions expressly requiring the litigation of ICCO's claim in State Court." (July 27, 2001, Supplemental Aff. of Mark H. Fandrich.) Debtor's attorney, on the other hand, admits that the parties "discussed that the State Court litigation would continue in the State Court and that ICCO would then be treated with other unsecured creditors once its claim was liquidated," but maintains that ICCO's attorney "stipulated that ICCO's claim would be treated as worth $1.00 solely for the purpose of voting for or against the plan." (July 17, 2001, Aff. of Allan J. Bentkofsky.) ICCO denies this. This conflict as to the parties' agreement is not the unequivocal expression of the parties' intent that is required to permit reformation. Accordingly, reformation is not warranted under the circumstances.

## V. *CONCLUSION*

The Bankruptcy Court properly concluded that pursuant to the First Amended

Plan its jurisdiction did not extend to post-substantial consummation matters such as ICCO's motion to determine its claim. There was no abuse of discretion in the Bankruptcy Court's finding that insufficient grounds existed to warrant relief under Fed.R.Civ.P. 60(b)(6). The issue of estoppel is more properly suited for determination in the state court litigation regarding ICCO's contract claim against debtor. Finally, the Bankruptcy Court properly determined that ICCO failed to establish that it was entitled to reformation.

Accordingly, it is

ORDERED that

1. The October 17, 2001, Order of the Bankruptcy Court is AFFIRMED IN ITS ENTIRETY; and

2. ICCO's motion to determine its claim pursuant to 11 U.S.C. § 502(b) is DENIED.

The Clerk of the Court is directed to close the file in this matter.

IT IS SO ORDERED.