06-4764-cv
Bridgeport Guardians, Inc. v. Delmonte

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued February 6, 2008                Decided August 11, 2008)

Docket No. 06-4764-cv

_____

Bridgeport Guardians, Inc., Theophilus B. Meekins, Charles D. Smith,
Arthur Carter, Richard Herlihy, Thomas D. Flynn, David Daniels,
Raymond Sherwood, Carlos Medina, Joe Ann Simmons, James Sheffield,
Brenda Dixon, TNT Specialized Division,

Plaintiffs-Appellees,

William Bailey, Hispanic Society Bridgeport
Police Department, Inc.,

Intervenors-Plaintiffs-Appellees,

William H. Clendenen, Jr.,

Special Master,

v.

Arthur J. Delmonte, John Devine, John C. O'Leary, Frank Delaquila,
Larry Harris, Jr., Robert Bruno, James McCarthy, Glenn Prentice,
Captain William Giblin, Richard Cummings, Sgt. David J. Hoyt, All
Defendants, AFSCME Council 15, Local 1159, AFL-CIO, George Zwally,
Bridgeport Police Union AFSCME Council 15, AFL-CIO.

Defendants,

City of Bridgeport and Bridgeport Police Union,

Defendants-Appellants,

John Donovan, Thomas Scanlon, Robert Mangano, James Honis, James
Halpin, William Chapman, Aida Remele, Albert Fedorek,
Gregory Iamartino, Judd Lezotte, Thomas Sweeney,

Movants,

Michael Novia, USA, Board of Police Commissioners, Alfonso Losada,
Rachelle Berarducci, Ramon Larrucuente, Eugene O'Neill, Kevin Boyle,

Interested-Party.

_____

Before:

CARDAMONE, PARKER, and HALL,
Circuit Judges.

_____

The City of Bridgeport appeals from an order entered August 14, 2006 in the United States District Court for the District of Connecticut (Arterton, J.) affirming the referral to a special master of the discrimination complaint brought by a civilian employee of the Bridgeport Police Department, and denying the City's motion to reconsider.

Appeal dismissed for lack of appellate jurisdiction.

_____

AIMEE J. WOOD, Bridgeport, Connecticut (William J. Wenzel, Pullman & Comley, LLC, Bridgeport, Connecticut, of counsel), for Defendants-Appellants.

SEAN K. McELLIGOTT, Bridgeport, Connecticut (Antonio Ponvert III, Koskoff, Koskoff & Bieder, P.C., Bridgeport, Connecticut, of counsel), for Plaintiffs-Appellees.

_____

CARDAMONE, Circuit Judge:

This is an appeal from an order of the United States District Court for the District of Connecticut handed down by Judge Janet Bond Arterton and entered on August 14, 2006. The order affirmed the district court's prior referral to a special master of the City of Bridgeport's objection to the same special master's investigating a claim of racial discrimination made by an employee of the Bridgeport Police Department.

Thus, the setting for the present appeal is the City of Bridgeport, Connecticut, and in particular, its police department. Bridgeport is Connecticut's largest city, with a population of almost 140,000 people. Its advantageous location on Long Island Sound attracted early settlers and by the mid-nineteenth century the City had grown into a substantial manufacturing center. During the 1900s, like many cities in the Northeast, Bridgeport lost a portion of its manufacturing base, and that left in its wake serious problems of unemployment and crime. One of the hurdles Bridgeport has faced in adapting to its changed circumstances is the fact that its police department has engaged in racial discrimination against the Black and Hispanic officers on its force.

Since 1972 Bridgeport has been bound by a series of federal court orders designed to remedy this discrimination. A remedial order was issued in 1983 by the United States District Court for the District of Connecticut and remains in force today. That order appointed the special master whose authority is the subject

2

of the present appeal. In this appeal, the City challenges, first, the special master's authority to investigate the new complaint of racial discrimination because it was brought by one of the police department's civilian employees rather than a police officer. And, second, the City questions the special master's power to decide the scope of his own authority in the first instance. We write to address the second question, and to explain why our answer to that question deprives us of jurisdiction to reach the merits of the City's appeal, to which we now turn.

BACKGROUND

A.  Initial Actions

The instant case had its genesis in 1978 when plaintiffs, an organization of Black police officers known as the Bridgeport Guardians, Inc., and three individual Black police officers, sued the City of Bridgeport and its Police Commissioners in the United States District Court for the District of Connecticut, alleging racial discrimination and free speech violations within the Bridgeport Police Department (Department). See Bridgeport Guardians, Inc. v. Delmonte, 553 F. Supp. 601, 604 (D. Conn. 1982). The Department had already been the target of a number of discrimination suits resulting in federal court orders going back to 1972. See Bridgeport Guardians, Inc. v. Members of Bridgeport Civil Serv. Comm'n, 354 F. Supp. 778, 782, 798-800 & n.16 (D. Conn. 1973) (enjoining use of patrolman's examination found to have adverse impact on Black and Puerto Rican candidates, and

3

imposing hiring and promotion quotas to remedy past discrimination), aff'd in part and rev'd in part, 482 F.2d 1333 (2d Cir. 1973) (holding promotion quotas unwarranted but affirming in all other respects), modified order aff'd, 497 F.2d 1113 (2d Cir. 1974); Bridgeport Guardians v. Bridgeport Police Dep't, 431 F. Supp. 931, 941 (D. Conn. 1977) (rejecting challenge to Department's detective examination, but noting that the "distressing absence of minority group members from the supervisory ranks of the [Department] should be a cause for continuing concern by responsible officials").

While the previous suits had focused on the disparate impact of the Department's hiring and promotion procedures, the plaintiffs in the 1978 suit claimed the Department was intentionally discriminating against Black and Hispanic police officers, and then retaliating against those who complained about the violation of their constitutional rights. See Delmonte, 553 F. Supp. at 607-18. The district court agreed, holding defendants' actions violated Titles VI and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the First Amendment of the U.S. Constitution. Delmonte, 553 F. Supp. at 607-18. It specifically found a pattern of intentional discrimination in (1) the way the Department assigned police officers to its internal divisions, geographic areas, and individual partners, (2) the way the Department carried out disciplinary procedures, and (3) the overall environment in which police officers were forced to work. Id. It found Black police

4

officers were almost entirely excluded from assignments to the Department's more prestigious divisions, and were effectively segregated within the patrol division by being regularly paired as partners with other minority officers. Id. at 607-10, 12-13. Black and Hispanic officers in the patrol division were then disproportionately assigned to high crime areas. Id. at 610-12.

In addition, the court found Black officers were very likely to be disciplined or fired for conduct that was generally ignored when committed by White police officers. Id. at 613-14. Moreover, Black officers were frequently harassed and subjected to racial slurs and disparaging remarks within the Department that were not only tolerated, but also were engaged in by supervisory personnel, which included the head of the Department. Id. at 614-16. Among many examples of shocking harassment was a displayed poster -- one that the court assumed was approved by supervisory personnel -- in which a Black man, identified by a racial epithet, was portrayed as a target to be shot at. Id. at 615.

B.    1983 Remedial Order of the District Court

To remedy these violations, the district court issued an order in 1983, regulating various aspects of the Department's procedures for appointments, assignments, and disciplinary measures, and enjoining the defendants, as well as the defendants' officers, agents, and employees, from engaging in discrimination, harassment, or retaliation against Department

5

officers. See id. at 618-21. Among other things, the remedial order appointed a "qualified, neutral Special Master" to

> a) Review any and all disciplinary actions instituted against any black officer who claims such action is racially discriminatory in purpose or effect; and to recommend an appropriate adjustment in any such action found to be racially discriminatory as to initiation, severity of sanction or otherwise.
> b) Receive, investigate, and remedy all complaints of discriminatory treatment, racial harassment or slurs within the B.P.D. and, in appropriate cases, to bring disciplinary charges against those responsible and/or those supervisors who foster or permit such racial harassment to occur in violation of departmental rules.
> c) Review any disqualification of any black officer seeking promotion which disqualification is based on grounds of any suspension, disciplinary action, or alleged misconduct upon which such sanction was premised occurring from 1978 to the date of this Order.

Id. at 619-20. The order provides that the special master's findings and recommendations may be appealed to the district court. Id. at 620.

C. Special Master and City

Since his appointment, the special master has issued numerous findings and recommendations in accordance with the order. The district court in turn has recognized the special master's broad powers to take all actions and measures necessary or proper to implement the remedial order. Bridgeport Guardians v. Delmonte, No. 05:78cv175 (D. Conn. May 14, 1999). It has also held the Department in contempt at least three times. See Bridgeport Guardians v. Delmonte, 371 F. Supp. 2d 115, 120 (D.

6

Conn. 2005). In its April 2005 contempt ruling, the district court remarked on the Department's "long history of foot-dragging and non-enforcement of its racial, ethnic and sexual slur and harassment policies," which it thought defied logic. Id. at 117, 119-20.

The Bridgeport Police Department has now implemented a slur and harassment policy, which states that "[i]n appropriate cases, Police Department employees may file a complaint with [the] Special Master." The policy has been approved by the district court and there are other signs that the parties may be moving closer to resolving their dispute. For now, however, the 1983 remedial order remains in effect, and the special master continues to carry out his duties under it. See Bridgeport Guardians v. Delmonte, 238 F.R.D. 123 (D. Conn. 2006) (denying joint motion for modification of remedy order), reconsideration denied, No. 05:78cv175, 2007 WL 108472, 2007 U.S. Dist. LEXIS 2029 (D. Conn. Jan. 10, 2007), appeal filed, No. 07-0960 (2d Cir. Mar. 9, 2007).

### D. Instant Complaint

It is against this background that one of the Department's civilian employees -- an African-American female typist -- brought a new complaint of racial discrimination to the special master's attention. Her complaint triggered the series of decisions that led to the present appeal. When the special master forwarded this new complaint to the parties and requested a response, the City filed an objection with the district court.

7

It insisted the special master's mandate is limited to complaints brought by police officers, and that he lacks authority to make findings and recommendations on the complaints of civilian employees.

On December 19, 2005 the district court entered an order stating that the City's "objection to the investigation of the complaint . . . is referred to the Special Master in light of the Court's recent approval of the stipulated slur and harassment policy." The City then moved for reconsideration, which the district court denied in an order entered August 14, 2006. That court ruled the case should remain with the special master for him to determine in the first instance whether the complaint falls within his purview under the remedial order and the slur and harassment policy.

The City now challenges Judge Arterton's denial of its motion for reconsideration. It argues that the complaint of a civilian employee of the Police Department falls outside the special master's authority and the special master lacks authority under the 1983 remedial order to determine the scope of his own authority in the first instance. Because the remedial order does not supply such authority, the City maintains, the district court's referral of the City's objection must be considered a modification to that order and a new special master appointment under Federal Rule of Civil Procedure 53. As such, the City tells us, the referral should be overturned because the district court did not comply with Rule 53. The Bridgeport Guardians aver

8

we lack jurisdiction because there is no appealable order before us.

## DISCUSSION

### A. City's Contention of Modification Under § 1292

If the City were correct that the district court's referral of its objection constituted a modification of the 1983 remedial order, then arguably we might have jurisdiction to review that decision as an interlocutory order under 28 U.S.C. § 1292(a)(1). See Crumpton v. Bridgeport Educ. Ass'n, 993 F.2d 1023, 1027 (2d Cir. 1993) (holding that "we . . . have jurisdiction to determine whether the district court's order constituted an impermissible modification of the consent decree"). But the modification contention is premised on a fundamental misreading of the remedial order and misunderstanding of the doctrine of jurisdiction to determine jurisdiction.

The remedial order unquestionably gives the special master authority to determine the scope of his own authority in the first instance. It does this implicitly by directing him to "[r]eview" disciplinary actions and disqualifications and to "[r]eceive, investigate and remedy" complaints. To carry out this mandate, the special master must necessarily determine which disciplinary actions, disqualifications, and complaints fall within his purview. If he could not do that, he would be in the position of acting only on cases individually referred to him by the district court or some other body created to determine his authority. While such a process might well have been instituted,

9

it plainly was not established or contemplated by the remedial order in this case.

Nor is the City correct that the special master's determination of his own authority, in the first instance, would usurp powers reserved solely to Article III judges. While the doctrine of jurisdiction to determine jurisdiction is often discussed in the context of Article III courts, see, e.g., Kuhali v. Reno, 266 F.3d 93, 100-01 (2d Cir. 2001), no reason suggests it cannot apply in some form to other bodies as well, even those acting in an investigatory capacity. See, e.g., SEC v. Brigadoon Scotch Distrib. Co., 480 F.2d 1047, 1052-53 (2d Cir. 1973) ("The [SEC] must be free without undue interference or delay to conduct an investigation which will adequately develop a factual basis for a determination as to whether particular activities come within the Commission's regulatory authority."); cf. Prosecutor v. Tadic, Case No. IT-94-1-I, Decision on the Defence Motion for Interlocutory Appeal on Jurisdiction, ¶ 18 (Oct. 2, 1995) (concluding that international tribunals inherently possess jurisdiction to determine their own jurisdiction in the absence of an express agreement to the contrary); Nottebohm Case (Liech. v. Guat.), 1953 I.C.J. 111, 119 (Nov. 18) (same).

This is not to say that the special master's jurisdiction here is the same as an Article III court's power to declare law, or that the special master's jurisdictional determination would have the same res judicata effect as a federal court's. See, e.g., United States v. United Mine Workers, 330 U.S. 258, 293-95

10

(1947) (holding that a party may be punished for disobeying a court order even if the court was ultimately determined to lack jurisdiction to issue the order); Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 376-78 (1940) (holding that courts' determinations of their own jurisdiction, "while open to direct review, may not be assailed collaterally").  But we need not assign those attributes of an Article III court's jurisdiction to the special master in order to hold that, like any person or body with limited authority, he acts only after first deciding he has the authority to do so.  The 1983 remedial order unquestionably gives the special master this authority.

Without being able to argue that the remedial order has been modified, the City's case for jurisdiction under 28 U.S.C. § 1292(a)(1) collapses.  Section 1292(a)(1) "functions only as a narrowly tailored exception to the policy against piecemeal appellate review," and in the absence of a motion "specifically addressed to injunctive relief," it requires a showing that the order (1) might have a serious, perhaps irreparable consequence; and (2) can be effectually challenged only by immediate appeal. Sahu v. Union Carbide Corp., 475 F.3d 465, 467 (2d Cir. 2007).

The City has not shown the district court's referral of the complaint (much less the objection) to the special master will have consequences that can be adequately challenged only by an immediate appeal.  There has been no determination with respect to the special master's authority over civilian complaints.  Instead, the district court has simply asked the special master

11

to determine in the first instance whether this particular complaint falls within his purview under the remedial order and the stipulated slur and harassment policy. This Court cannot review whether the special master may rule on the civilian complaint at issue in this appeal until the special master has made a determination, and the district court, in turn, has had an opportunity to rule on that determination in an appealable order that is then brought before us.

## B. Reference By the District Court is not A Final Decision Under § 1291

The only other conceivable argument for appellate jurisdiction in the case at hand would be if either of the district court's orders could be deemed a final decision within the meaning of 28 U.S.C. § 1291. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 467 (1978); Ibeto Petrochem. Indus. Ltd. v. M/T Beffen, 475 F.3d 56, 61 (2d Cir. 2007). An order referring a matter to a special master, however, is generally not a final order appealable under 28 U.S.C. § 1291. See Grilli v. Metro. Life Ins. Co., 78 F.3d 1533, 1538 (11th Cir. 1996) (holding that "[a]n order referring a matter to a special master is not a final order appealable under 28 U.S.C. § 1291 because it does not terminate the appellant's claim"); Loral Corp. v. McDonnell Douglas Corp., 558 F.2d 1130, 1131-32 (2d Cir. 1977) (finding an order of reference to a magistrate as special master

12

for hearing and preparation of proposed findings not a final judgment or order and therefore not appealable).

It is true that a different analysis may be required where a final judgment has already been entered and an order is issued during "a protracted remedial phase." United States v. Yonkers Bd. of Educ., 946 F.2d 180, 183 (2d Cir. 1991). In such circumstances, we have held that § 1291 must be given a practical, not a technical construction. Id.; cf. Silverman v. Tracar (In re Am. Preferred Prescription, Inc.), 255 F.3d 87, 93 (2d Cir. 2001) (applying this reasoning to hold appealable the appointment of a trustee in bankruptcy proceedings after the confirmation of a reorganization plan).

Nonetheless, even under a practical approach there is nothing final about the orders at issue in this case, which simply recognize the special master's inherent authority, discussed above, to determine his own authority under the 1983 remedial order. Once a special master has been appointed in circumstances like the ones we face, to treat the referral of each complaint as final would have the undesirable effect of turning the "protracted remedial phase" into an endless war of attrition through appeal. We cannot hold that § 1291 encompasses such an absurd outcome.

The district court has neither modified the scope of the 1983 remedial order nor conclusively determined any rights of the parties involved. Consequently, we have before us neither an interlocutory order under 28 U.S.C. § 1292(a)(1) nor a final

13

decision under 28 U.S.C. § 1291. Nor is there any other basis for appellate jurisdiction present in this case. Having found we lack jurisdiction to review the district court's actions, we must dismiss the appeal.

CONCLUSION

Accordingly, for the foregoing reasons, the appeal is dismissed for lack of appellate jurisdiction.

14