20-202(L)
*Amara v. Cigna Corporation*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2021

(Argued: November 22, 2021          Decided: November 10. 2022)

Nos. 20-202 (L), 20-3219 (Con)

_____

JANICE C. AMARA, GISELA R. BRODERICK, and ANNETTE S. GLANZ, individually
and on behalf of others similarly situated,

*Plaintiffs-Appellants,*

-v.-

CIGNA CORPORATION and CIGNA PENSION PLAN,

*Defendants-Appellees.*[1]

_____

Before:          LIVINGSTON, *Chief Judge*, KEARSE and LEE, *Circuit Judges*.

Plaintiffs-Appellants filed two appeals from postjudgment orders in the same case, which we have consolidated.   In No. 20-202, Defendants-Appellees move to dismiss, arguing that we lack appellate jurisdiction.   We conclude that a portion of Plaintiffs-Appellants' appeal is untimely, so we grant Defendants-Appellees' motion to dismiss in part.   To the extent we have jurisdiction, we hold

_____

[1] The Clerk of Court is directed to amend the official caption as set forth above.

that the district court (Arterton, *J.*) did not abuse its discretion and so affirm on the merits in No. 20-202. Plaintiffs-Appellants also appeal in No. 20-3219 from the district court's denial of their motion for an equitable accounting, which Plaintiffs-Appellants filed in the district court after they appealed in No. 20-202. We conclude that the district court did not abuse its discretion in denying Plaintiffs-Appellants' motion, so we affirm.

In sum, in No. 20-202, we GRANT in part and DENY in part Defendant-Appellees' motion to dismiss. To the extent we have jurisdiction, we AFFIRM the district court's decision on the merits. In No. 20-3219, we AFFIRM the district court's order denying Plaintiffs-Appellants' motion for an equitable accounting.

FOR PLAINTIFFS-APPELLANTS:        STEPHEN R. BRUCE (Allison C. Pienta, *on the brief*), Stephen R. Bruce Law Offices, Washington, D.C.

        Christopher J. Wright, *on the brief*, Harris Wiltshire Grannis, LLP, Washington D.C.

FOR DEFENDANTS-APPELLEES:        A. KLAIR FITZPATRICK (Jeremy P. Blumenfeld, *on the brief*) Morgan, Lewis & Bockius LLP, Philadelphia, PA.

DEBRA ANN LIVINGSTON, *Chief Judge*:

In these consolidated appeals, Plaintiffs-Appellants Janice C. Amara, Gisela R. Broderick, and Annette S. Glanz (collectively, "Plaintiffs") appeal on behalf of a class from several postjudgment orders of the district court (Arterton, *J.*).

In their first appeal, No. 20-202, Plaintiffs challenge orders implementing a final judgment that, among other things, required Defendants-Appellees Cigna Corporation and CIGNA Pension Plan (collectively, "Cigna") to reform Cigna's pension plan to pay greater benefits to members of the plaintiff class. *See Amara v. CIGNA Corp.* (*Amara V*), 775 F.3d 510 (2d Cir. 2014). After we affirmed the final judgment in *Amara V*, the district court, in a series of four decisions, resolved disputes between the parties about the methodology Cigna would use to calculate the reformed pension benefits. More than a year later, Plaintiffs moved for sanctions against Cigna and for other relief. The district court denied that motion. On appeal, Plaintiffs seek to challenge both the district court's order denying sanctions and its earlier orders addressing the methodology for calculating benefits. Cigna

3

moves to dismiss, principally arguing that we lack jurisdiction because Plaintiffs'

appeal is untimely.

For the reasons explained below, we grant in part and deny in part Cigna's

motion. Plaintiffs did not timely appeal from the district court's orders address-

ing the methodology for computing individual relief, so we lack jurisdiction over

that portion of Plaintiffs' appeal. But we have jurisdiction over the portion of

Plaintiffs' appeal challenging the district court's order denying sanctions. Con-

sidering that order on the merits, we conclude that it was not an abuse of discretion

and so affirm.

After Plaintiffs appealed in No. 20-202, they moved for an equitable ac-

counting in the district court. The district court denied that motion, and Plaintiffs

appealed again. Because the district court did not abuse its discretion in declin-

ing to order an equitable accounting, we also affirm in No. 20-3219.

## BACKGROUND

### Methodology Orders

We discussed the background of this litigation in *Amara V*, 775 F.3d at 513–

19. *Amara V* affirmed the district court's final judgment ordering Cigna to reform

its pension plan to pay greater benefits to Plaintiffs under Parts A and B of Cigna's

pension plan ("A+B" remedy). On remand, the parties disputed how Cigna

4

would calculate A+B benefits.   The district court resolved those disputes in four

orders.   *See Amara v. Cigna Corp.* (*Amara VI*), Joint App'x in No. 20-202, at 198–219

(D. Conn. Jan. 14, 2016); *Amara v. Cigna Corp.* (*Amara VII*), 2017 WL 88968 (D. Conn.

Jan. 10, 2017); *Amara v. CIGNA Corp.* (*Amara VIII*), 2017 WL 10902877 (D. Conn.

July 14, 2017); *Amara v. Cigna Corp.* (*Amara IX*, and together with *Amara VI*, *Amara

VII*, and *Amara VIII*, the "Methodology Orders"), 2017 WL 5179230 (D. Conn. Nov.

7, 2017).[2]   The Methodology Orders established how Cigna would calculate the

dates from which sums were due under Part A or Part B, the dates from which

prejudgment interest should be paid, and the prejudgment interest rate, among

other issues.   Joint App'x in No. 20-202, at 209 n.15; Special App'x in No. 20-202,

at 14.   The district court issued the last Methodology Order in November 2017.

## Attorney's Fees Order

The next month, Plaintiffs requested attorney's fees based on their valuation

of the plaintiff class's total recovery.   In the first sentence of their December 2017

attorney's fees request, Plaintiffs asserted: "This Court has completed its orders on

the methodology for computing individual relief under the A+B reformation in

---

[2] Unless otherwise indicated, we omit all internal citations, quotation marks, alterations, emphases, and footnotes from citations.

this class action." Plaintiffs' Notice of Value of Common Fund Recovery ("Plaintiffs' 2017 Request for Attorney's Fees"), Ex. A to Cigna's Motion To Dismiss in No. 20-202 ("MTD"), at 1. Plaintiffs contended that they had computed "the value of the common fund recovery" "[i]n compliance with that methodology." *Id.* Plaintiffs also reported they would "deduct the fee award from the individual relief amounts and provide notice to the class of the benefits payable to them" after the court decided their fee request. *Id.*

Cigna disputed Plaintiffs' common-fund calculation, so the district court convened a status conference to address that issue in July 2018. At that conference, Plaintiffs attempted to raise issues concerning the Methodology Orders. But the district court rebuffed Plaintiffs' attempt, instructing the parties in no uncertain terms that the time for litigating those issues had come and gone. *See* Joint App'x in No. 20-202, at 646 ("[W]e're not going to relitigate methodology; and to the extent there are issues that could have been brought up in the motions related to methodology and weren't, it's really too late."). The district court declined to "act[] in response to what appears to be the Plaintiffs' invitation for the relitigation of settled methodology disputes or perhaps new methodology disputes[.]" *Id.* at

6

671; *see also id.* at 652 ("I don't see that at this point we can or should be relitigating any of the methodology.").

The district court later adopted Plaintiffs' proposal for calculating attorney's fees. *Amara v. Cigna Corp.* (*Amara X*), 2018 WL 5077894 (D. Conn. Oct. 17, 2018). In so doing, the district court recognized that the parties' lingering dispute over attorney's fees prevented Cigna from paying A+B benefits. *See id.* at *1 ("The parties dispute the proper calculation of the present value of the common fund recovery, which must be determined in order for the Court to rule on Plaintiffs' pending motion for attorney's fees, which in turn must be ruled on in order for remedy payments to begin issuing to class members."). The district court subsequently awarded attorney's fees, emphasizing that Cigna should "avoid further delay in remedy payments to class members." *Amara v. Cigna Corp.* (*Amara XI*, or the "Attorney's Fees Order"), 2018 WL 6242496, at *3 (D. Conn. Nov. 29, 2018).

Cigna promptly began to calculate and pay A+B benefits. By December 29, 2018, Cigna had calculated remedy benefits for about 27,000 class members. Joint App'x in No. 20-202, at 882. By January 28, 2019, Cigna had sent remedy notices containing benefits calculations to all class members. *Id.* By February 27, 2019, Cigna had paid nearly $30 million in past due benefits to over 8,900 class members.

7

*Id.* And by March 2019, Cigna had mailed a form to class members who were eligible for immediate annuity benefits that permitted them to elect the manner in which they would receive their annuity payments. *Id.*

**Sanctions Order**

In April 2019—almost six months after the district court awarded attorney's fees and over a year after the last Methodology Order—Plaintiffs moved to enforce the Methodology Orders and to hold Cigna in contempt and impose sanctions. They contended that Cigna had not complied with the final judgment or the Methodology Orders in calculating the A+B relief. The district court denied that motion. *See Amara v. Cigna Corp.* (*Amara XII*), 2019 WL 3854300 (D. Conn. Aug. 16, 2019); *Amara v. CIGNA Corp.* (*Amara XIII*, and together with *Amara XII*, the "Sanctions Order"), 2020 WL 127696 (D. Conn. Jan. 10, 2020). Plaintiffs appealed in No. 20-202 soon after, challenging both the Methodology Orders and the Sanctions Order.

**Equitable Accounting**

After appealing in No. 20-202, Plaintiffs moved in the district court for an "equitable accounting" of Cigna's efforts to satisfy the judgment. The district court denied that motion, concluding that it had "previously accepted Cigna's

8

representations that the current amounts owed to Class Members have been re-mitted and the judgment satisfied." *Amara v. Cigna Corp.* (*Amara XIV*), 2020 WL 4548135, at *5 (D. Conn. Aug. 6, 2020); *see also Amara v. Cigna Corp.* (*Amara XV*), Special App'x in No. 20-3219, at 13–14 (D. Conn. Sept. 10, 2020) (reaffirming on reconsideration that "Plaintiffs failed to offer a persuasive substantive legal justi-fication for why an accounting should be ordered"). Plaintiffs timely appealed in No. 20-3219. We consolidated the appeals.

## DISCUSSION

### I. Appeal in No. 20-202

We consider first whether we have jurisdiction over Plaintiffs' appeal in No. 20-202. Plaintiffs purport to appeal from both the Methodology Orders and the Sanctions Order. Cigna moves to dismiss, arguing that we lack jurisdiction to review the Methodology Orders because they became final more than 30 days be-fore Plaintiffs appealed. Cigna concedes that Plaintiffs' appeal from the Sanc-tions Order was timely but contends that we still lack jurisdiction because even that portion of Plaintiffs' appeal challenges the Methodology Orders "in sub-stance." MTD 19.

We agree that Plaintiffs' appeal from the Methodology Orders is untimely. And though we have jurisdiction over the portion of Plaintiffs' appeal challenging

9

the Sanctions Order, the scope of our review is limited. Because Plaintiffs did not timely appeal the Methodology Orders, we consider only whether the district court correctly interpreted the Methodology Orders in the Sanctions Order—not whether the Methodology Orders themselves were correctly decided. We conclude that the district court did not abuse its discretion in the Sanctions Order, so we affirm on the merits to the extent we have jurisdiction.

## A.

Congress has limited our jurisdiction in two respects relevant here. Under 28 U.S.C. § 1291, we may review only a district court's "final decisions." And under 28 U.S.C. § 2107(a) and Federal Rule of Appellate Procedure 4(a)(1)(A), we have jurisdiction only if an aggrieved party appeals within 30 days after a district court issues a final decision.[3] This case turns principally on the meaning of

---

[3] By statute, a civil appeal must be filed "within thirty days." 28 U.S.C. § 2107(a); *see Hall v. Hall*, 138 S. Ct. 1118, 1124 (2018). And "[u]nder [Federal Rule of Appellate Procedure] 4(a), a notice of appeal in a civil case must be filed within 30 days after entry of judg[]ment." *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415 (2d Cir. 2004) (citing Fed. R. App. P. 4(a)(1)(A)). "[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles v. Russell*, 551 U.S. 205, 214 (2007). This 30-day deadline is thus decidedly *in*flexible. *See id.* (noting that courts cannot "create equitable exceptions to jurisdictional requirements"); *accord Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493, 1497 (2022).

§ 1291. We begin with some general principles before turning to their application in the context of postjudgment orders.

"Under § 1291 of the Judicial Code, federal courts of appeals are empowered to review only 'final decisions of the district courts.'" *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1707 (2017) (quoting 28 U.S.C. § 1291). Section 1291's final-decision rule strikes a balance between "the competing considerations underlying all questions of finality—'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.'" *Johnson v. Jones*, 515 U.S. 304, 315 (1995) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171 (1974), in turn quoting *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511 (1950) (noting that these two "most important" "considerations . . . always compete in the question of appealability")).

"[T]he final judgment rule serves several salutary purposes." *Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 203 (1999). It "preserves the proper balance between trial and appellate courts, minimizes the harassment and delay that would result from repeated interlocutory appeals, and promotes the efficient administration of justice." *Microsoft*, 137 S. Ct. at 1712. It also "evinces a legislative judgment that restricting appellate review to final decisions prevents the debilitating

11

effect on judicial administration caused by piecemeal appeal disposition of what is, in practical consequence, but a single controversy." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 471 (1978) (quoted in *Ashmore v. CGI Grp., Inc.*, 860 F.3d 80, 84 (2d Cir. 2017)); *see also Cobbledick v. United States*, 309 U.S. 323, 325 (1940); *Crosby v. Buchanan*, 90 U.S. (23 Wall.) 420, 453 (1874).

Under § 1291, "a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996). Interlocutory orders, like discovery orders, "typically merge with the judgment for purposes of appellate review." *Fielding v. Tollaksen*, 510 F.3d 175, 179 (2d Cir. 2007). Thus, § 1291 generally channels "all claims of error in[to] a single appeal." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020).

Often, determining whether a district court's order is final is simple enough. *See, e.g., Hall*, 138 S. Ct. at 1124 ("The archetypal final decision is one that triggers the entry of judgment."). But not always. The Supreme Court has long recognized that "[n]o self-enforcing formula defining when a judgment is 'final' can be devised." *Republic Nat. Gas Co. v. Oklahoma*, 334 U.S. 62, 67 (1948); *see also Eisen*, 417 U.S. at 170 ("No verbal formula yet devised can explain prior finality decisions

12

with unerring accuracy or provide an utterly reliable guide for the future."); *Dickinson*, 338 U.S. at 511 (lamenting the "struggle of the courts[] sometimes to devise a formula that will encompass all situations and at other times to take hardship cases out from under the rigidity of previous declarations"). It has therefore instructed "that finality is to be given a practical rather than a technical construction." *Microsoft*, 137 S. Ct. at 1712; *accord Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)); *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375 (1981) (citing, *inter alia*, *Whiting v. Bank of the U.S.*, 38 U.S. (13 Pet.) 6, 15 (1839)).

To be clear, the Court has also "expressly rejected efforts to reduce the finality requirement of § 1291 to a case-by-case determination," *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 439 (1985) (citing *Coopers & Lybrand*, 437 U.S. at 473–75), and practical construction is in no way inconsistent with the recognition of general rules.[4] *See Johnson*, 515 U.S. at 315 (rejecting use of "ad hoc balancing to decide

---

[4] By way of example, the Court has recognized that a pending motion for attorney's fees generally "does not prevent finality" because "its resolution [does] not alter the [underlying] order or moot or revise decisions embodied in the order." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988); *see also* 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure, § 3915.6 (2d ed. Apr. 2022 update) [hereinafter Wright, Miller & Cooper] (same for pending order requesting

issues of appealability); *see also In re Chateaugay Corp.*, 922 F.2d 86, 91 (2d Cir. 1990)

(citing *Coopers & Lybrand*, 437 U.S. at 477 n.30).   But a pragmatic, nontechnical

"approach to the question of finality has been considered essential to the achieve-

ment of the 'just, speedy, and inexpensive determination of every action': the

touchstones of federal procedure."   *Brown Shoe Co. v. United States*, 370 U.S. 294,

306 (1962) (quoting Fed. R. Civ. P. 1); *see also Parkinson v. April Indus., Inc.*, 520 F.2d

650, 653 (2d Cir. 1975) ("Giving the final judgment rule a practical rather than a

technical construction has provided the courts with the flexibility necessary to

avoid the potential harm which could result from" a rigid interpretation.).

**B.**

We next address how these principles apply postjudgment.   More than a

century ago, the Supreme Court held that postjudgment orders are usually subject

to appellate review.   *See In re Farmers' Loan & Trust Co.*, 129 U.S. 206, 213–14

(1889); *accord* Wright, Miller & Cooper, *supra*, § 3916; *Smith v. Halter*, 246 F.3d 1120,

1122 (8th Cir. 2001).   But our jurisdiction in this context is still limited to district

court "decisions" that are also "final" under § 1291.   And the scope of review is

---

sanctions).

14

limited to questions raised by the postjudgment matter. We consider each of these requirements in turn.

i.

We first take up when a district court's postjudgment order is "final." "In postjudgment proceedings, the meaning of a 'final decision' is less clear because the proceedings necessarily follow a final judgment." *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 829 (11th Cir. 2010); *see also Solis v. Current Dev. Corp.*, 557 F.3d 772, 775–76 (7th Cir. 2009) (noting that the postjudgment finality "inquiry takes us into rocky terrain, since determining what constitutes a final decision can be [especially] tricky" in that context). "[W]hile 'a postjudgment order might seem final by definition because the judgment is already behind it,'" that is not so. *JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103, 1106 (6th Cir. 2019) (quoting *Findley v. Blinken (In re Joint E. & S. Dists. Asbestos Litig.)*, 22 F.3d 755, 760 (7th Cir. 1994)); *see also United States v. Smathers*, 879 F.3d 453, 459 (2d Cir. 2018) ("An order in a postjudgment proceeding is not necessarily a final decision simply because it follows the entry of judgment."). At the same time, a "decision 'final' within the

15

meaning of § 1291 does not necessarily mean the last order possible to be made in a case." *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152 (1964).

As then-Judge Gorsuch explained, "every post-judgment decision must be assessed on its *own terms* to determine whether it is a final decision amenable to appeal." *McClendon v. City of Albuquerque*, 630 F.3d 1288, 1293 (10th Cir. 2011). In other words, "[t]hough postjudgment decisions necessarily follow a final judgment, such orders are themselves subject to the test of finality." *Mamma Mia's Trattoria, Inc. v. Original Brooklyn Water Bagel Co.*, 768 F.3d 1320, 1325 (11th Cir. 2014); *see also Findley*, 22 F.3d at 760 ("[T]he requirements of finality must be met without reference to th[e] underlying [final] judgment.").

Though we look to general finality principles to determine postjudgment finality, these principles apply differently in the postjudgment context. We have observed "that a practical rather than a technical construction of finality is *especially* appropriate in the post-judgment context." *United States v. Yalincak*, 853 F.3d 629, 636 (2d Cir. 2017) (emphasis added) (internal quotation marks omitted); *see also United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 183 (2d Cir. 1991) ("[I]n cases involving a protracted remedial phase, we must give '§ 1291 a practical rather than a technical construction.'" (quoting *Firestone Tire*, 449 U.S. at 375)

(internal quotation marks omitted); *United States v. Apple Inc.*, 787 F.3d 131, 137 (2d Cir. 2015). Postjudgment, there is often "little danger of interference with continuing trial court proceedings, and equally little danger of repetitious appellate consideration of related issues." Wright, Miller & Cooper, *supra*, § 3916. For that reason, "traditional concerns regarding piecemeal review carry less force during such proceedings." *Yalincak*, 853 F.3d at 636; *see also In re Am. Preferred Prescription, Inc.*, 255 F.3d 87, 93 (2d Cir. 2001); *United States v. Ray*, 375 F.3d 980, 986 (9th Cir. 2004); *Nat'l Football League Players' Concussion Inj. Litig.*, 923 F.3d 96, 106 (3d Cir. 2019). Thus, in assessing postjudgment finality, we give less weight to "the inconvenience and costs of piecemeal review" and correspondingly greater weight to "the danger of denying justice by delay." *Dickinson*, 338 U.S. at 511; *see also Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1064 (9th Cir. 2010).

Mindful of these principles, we conclude that a district court's postjudgment order is final when it "has finally disposed of [a] question, and there are no pending proceedings raising related questions." Wright, Miller & Cooper, *supra*, § 3916. This rule ensures that "the trial court's disposition of important questions that arise after a final judgment" are subject to appellate review. *Id.* The Supreme Court has long held that "most trial court decisions resolving important,

17

but ancillary, matters that arise after the entry of judgment are" subject to appellate review. *Smith*, 246 F.3d at 1122 (citing *In re Farmers' Loan & Trust Co.*, 129 U.S. at 213–14). And once the district court has completely disposed of a postjudgment matter "if the orders are not found final, there is little prospect that further proceedings will occur to make them final." Wright, Miller & Cooper, *supra*, § 3916; *accord Ray*, 375 F.3d at 986. "[I]f appeal is not allowed" in that circumstance, "there is a real risk that all opportunity for review will be lost." Wright, Miller & Cooper, *supra*, § 3916; *see also Ohntrup v. Firearms Ctr., Inc.*, 802 F.2d 676, 678 (3d Cir. 1986); *United States v. Washington*, 761 F.2d 1404, 1407 (9th Cir. 1985).

At the same time, we defer review until the district court has decided all *related* issues to prevent "piecemeal appeals of interlocutory orders in ongoing postjudgment proceedings." *JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper, Co.*, 707 F.3d 853, 868 (7th Cir. 2013). "Appeal ordinarily should not be available as to any particular post-judgment proceeding before the trial court has reached its final disposition." Wright, Miller & Cooper, *supra*, § 3916; *see also Cadle Co. v. Neubauer*, 562 F.3d 369, 372 (5th Cir. 2009); *Findley*, 22 F.3d at 760. And as in the prejudgment context, interlocutory postjudgment orders "typically merge with the judgment" that concludes a postjudgment proceeding "for purposes of

appellate review." *Fielding*, 510 F.3d at 179; *see Vera v. Republic of Cuba*, 802 F.3d 242, 247 (2d Cir. 2015).

Our cases illustrate these principles. We have held that we generally lack jurisdiction over appeals from postjudgment discovery orders, *Preferred Prescription*, 255 F.3d at 93, including orders granting subpoenas in postjudgment collection proceedings, *Vera*, 802 F.3d at 247; *United States v. Fried*, 386 F.2d 691, 693–95 (2d Cir. 1967) (Friendly, *J.*); *see also EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 205 (2d Cir. 2012) (concluding that a discovery order was non-final because it did not "terminate [the] collection proceedings"). "[T]he 'relevant final decision' in such proceedings is the 'subsequent judgment that concludes the collection proceedings.'" *Yalincak*, 853 F.3d at 636 (quoting *Vera*, 802 F.3d at 247). But we have asserted jurisdiction over postjudgment orders denying motions for recusal of a district judge, *see Yonkers*, 946 F.2d at 183; *United States v. Bloomer*, 150 F.3d 146, 149 (2d Cir. 1998), and to disqualify a court-appointed monitor, *see Apple*, 787 F.3d at 137–38. In those cases, the district court "ha[d] reached its final disposition" on the relevant issue, Wright, Miller & Cooper, *supra*, § 3916, so its orders were final.

Postjudgment sanctions and contempt orders are particularly instructive examples. "Final disposition of a post-judgment motion for sanctions" generally

19

"establishes a second final and appealable judgment."   Wright, Miller & Cooper, *supra*, § 3915.6.   So too, "[c]omplete disposition of contempt proceedings initiated to enforce a final judgment supports appeal."   *Latino Officers Ass'n City of N.Y., Inc. v. City of New York*, 558 F.3d 159, 163 (2d Cir. 2009) (quoting Wright, Miller & Cooper, *supra*, § 3917 (3d ed. 2008)).   "Appeal can be taken from an order that *denies* civil contempt sanctions," *id.* (emphasis added), because "no further district court action is necessary to give life to the denial," Wright, Miller & Cooper, *supra*, § 3917 n.66 (quoting *Sanders v. Monsanto Co.*, 574 F.2d 198, 199 (5th Cir. 1978)).   And an order finding contempt *and* imposing sanctions is also "final."   *See Latino Officers Ass'n*, 558 F.3d at 163; Wright, Miller & Cooper, *supra*, § 3917.

But "[a]n order adjudging a party in contempt unaccompanied by sanctions is not final."   *In re Tronox Inc.*, 855 F.3d 84, 96 (2d Cir. 2017) (quoting *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 410 (2d Cir. 1997)).   If we considered the contempt finding alone, "any sanction imposed could then be challenged on appeal as an abuse of discretion."   *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 18 (2d Cir. 1992); *see also Cassidy v. Cassidy*, 950 F.2d 381, 382 (7th Cir. 1991).   "Finality,

in short, requires determination of both liability and sanction," even in the postjudgment context.   Wright, Miller & Cooper, *supra*, § 3917.

**ii.**

Next, we consider when a district court's order qualifies as a "decision" under § 1291.   The Supreme Court has held that we lack jurisdiction over appeals from ministerial orders.   *See Blossom v. Milwaukee & Chicago R.R. Co.*, 68 U.S. (1 Wall.) 655, 657 (1864) ("[W]here the act complained of was a mere ministerial duty, necessarily growing out of the decree which was being carried into effect, no appeal would lie."); *see also Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898 (9th Cir. 2001) ("A mere ministerial order, such as an order executing a judgment or . . . an order to disburse funds from the court registry, is not a final appealable order."); *Isidor Paiewonsky Assocs. v. Sharp Props., Inc.*, 998 F.2d 145, 150 (3d Cir. 1993); *Reed Migraine Ctrs. of Tex. P.L.L.C. v. Chapman*, 987 F.3d 138, 140 (5th Cir. 2021); Wright, Miller & Cooper, *supra*, § 3916 (noting that some "postjudgment orders will involve ministerial or discretionary matters that are effectively unreviewable").   Ministerial orders do not qualify as decisions under § 1291.   *See*

*Ray*, 375 F.3d at 986 n.7 (distinguishing "a *judicial* decision" from "an administrative or ministerial order from which appeal is not available").

"[T]he appropriate inquiry" for whether an order is substantive or ministerial "is whether the order . . . affects rights or creates liabilities not previously resolved by the adjudication on the merits." *Isidor Paiewonsky Assocs.*, 998 F.2d at 150. Ministerial orders are often final because district courts generally do not contemplate "further proceedings," *Bey v. City of New York*, 999 F.3d 157, 163 (2d Cir. 2021), when they issue "mere ministerial order[s], such as an order executing a judgment or . . . an order to disburse funds from the court registry," *Am. Ironworks & Erectors*, 248 F.3d at 898. But because these orders are not decisions, they are not subject to appellate review. *See Ray*, 375 F.3d at 986 n.7; *see also Muncy v. City of Dall.*, 123 F. App'x 601, 604 (5th Cir. 2005) (recognizing that "an appeal from a post-judgment order should not function as a second appeal of the judgment"); Part I.B.iii, *infra*.

Although we have distinguished between "substantive" and "ministerial" postjudgment orders in the past, *see Preferred Prescription*, 255 F.3d at 92–93 (citing *Isidor Paiewonsky Assocs.*, 998 F.2d at 150); *Cent. States, Se. and Sw. Areas Pension Fund v. Express Freight Lines, Inc.*, 971 F.2d 5, 6 (7th Cir. 1992)), we have used those

22

terms imprecisely. We have referred to "post-judgment discovery orders" as non-appealable "ministerial" or "administrative" orders. *Id.* But postjudgment discovery orders are often more than "ministerial" because they typically "affect[] rights or create[] liabilities"—for example, by requiring a party to turn over documents—"not previously resolved by the adjudication on the merits." *Isidor Paiewonsky Assocs.*, 998 F.2d at 150.[5] Even so, postjudgment discovery orders are often not *immediately* appealable because, as in the prejudgment context, they are usually non-final "interlocutory decisions." *Baker v. F & F Inv.*, 470 F.2d 778, 780 n.3 (2d Cir. 1972); *see Vera*, 802 F.3d at 247.

Not always, however. "[T]he *denial* of a request for postjudgment discovery" is generally appealable when "no other route for obtaining appellate review is available." 19 George C. Pratt, Moore's Federal Practice — Civil § 202.13 & n.9 (3d ed. 2022) (citing *Cent. States*, 971 F.2d at 6; *Wilkinson v. FBI*, 922 F.2d 555, 558 (9th Cir. 1991); *Fehlhaber v. Fehlhaber*, 664 F.2d 260, 262 (11th Cir. 1981)) (emphasis

---

[5] Indeed, most postjudgment orders are more than ministerial. *See* Wright, Miller & Cooper, *supra*, § 3916; *Reed Migraine*, 987 F.3d at 140; *United States v. Stewart*, 452 F.3d 266, 272 (3d Cir. 2006); *United States v. Doe*, 962 F.3d 139, 143 (4th Cir. 2020). Those substantive "post-judgment orders issued in 'cases involving a protracted remedial phase' have readily been deemed appealable" in this Circuit. *Preferred Prescription*, 255 F.3d at 93 (quoting *Yonkers*, 946 F.2d at 183).

added).[6]   In other words, when a district court denies a request for postjudgment discovery and does not contemplate further proceedings, that order is generally appealable.   By stating that postjudgment discovery orders are "ministerial," *Preferred Prescription*, 255 F.3d at 92–93, we may have inadvertently suggested that these orders never qualify as "final decisions" under § 1291.   And more broadly, our prior cases may have suggested that any non-final postjudgment order is "ministerial" or "administrative."   *See id.*   But that conflates two distinct inquiries: whether a district court's order is final and whether it is substantive.

### iii.

Even when we have jurisdiction over an appeal from a postjudgment order, our review is circumscribed.   "The scope of appeal . . . should be restricted to the questions properly raised by the post-judgment motion; it should not extend to revive lost opportunities to appeal the underlying judgment."   Wright, Miller &

---

[6] A postjudgment order *granting* a request for discovery, like "a district court's decision to compel compliance with a subpoena[,] . . . is generally not a 'final decision' and therefore is not immediately appealable."   *Vera*, 802 F.3d at 246.   "To obtain immediate appellate review of such an order absent § 1292(b) certification, the subpoenaed party must typically defy the district court's enforcement order, be held in contempt, and then appeal the contempt order, which is regarded as final under § 1291."   *Id.*   "This process . . . recognizes only the contempt judgment, not the underlying enforcement order, as a final decision subject to appeal."   *Id.*

Cooper, *supra*, § 3916; *see also In re Lang*, 414 F.3d 1191, 1196 (10th Cir. 2005); *SEC v. Suter*, 832 F.2d 988, 990 (7th Cir. 1987). An appeal from a later order "does not give us jurisdiction to hear an untimely appeal from an earlier order, which was itself an appealable final order." *United States v. Gewin*, 759 F.3d 72, 77 (D.C. Cir. 2014). We must "identify the final decision in the postjudgment proceeding and confine any further appeal under section 1291 to that decision." *Bogard v. Wright*, 159 F.3d 1060, 1062 (7th Cir. 1998).

Thus, "[a]n appeal taken only after disposition of [a motion for] sanctions does not support review of the judgment on the merits if the time for appealing the judgment ha[s] run." Wright, Miller & Cooper, *supra*, § 3915.6; *see also Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 637 (3d Cir. 1982) ("[T]he merits of the underlying order may not be called into question in a post-judgment civil contempt proceeding." (citing *Oriel v. Russel*, 278 U.S. 358 (1929)). "Appeal is limited to new questions raised by the postjudgment order itself." Wright, Miller &

25

Cooper, *supra*, § 3916; *see also Lothian Oil (USA), Inc. v. Sokol*, 526 F. App'x 105, 108 (2d Cir. 2013) (summary order).

## C.

We now apply this legal framework to the facts of this case. The Methodology Orders and the Sanctions Order are postjudgment orders, so we apply the postjudgment appealability principles outlined above.

We conclude that we lack jurisdiction over Plaintiffs' appeal from the Methodology Orders because they became final more than 30 days before Plaintiffs appealed. And though we have jurisdiction over Plaintiffs' appeal from the Sanctions Order because Plaintiffs timely appealed, the scope of our review is narrow. We cannot consider whether the Methodology Orders were correctly decided because Plaintiffs did not timely appeal them. Because we conclude that the district court did not abuse its discretion in the Sanctions Order, we affirm on the merits to the extent we have jurisdiction.

### i.

We begin with Plaintiffs' appeal from the Methodology Orders. The district court issued the last Methodology Order in November 2017. And it resolved

Plaintiffs' request for attorney's fees in November 2018. Because Plaintiffs did not appeal until January 2020, their appeal is untimely, and we lack jurisdiction.

Plaintiffs contend that the Methodology Orders did not become final until the district court denied their motion to enforce and for other relief. We disagree. At the start, Cigna began paying benefits based on the Methodology Orders soon after the district court awarded attorney's fees. *See* Joint App'x in No. 20-202, at 882 (noting that Cigna paid $30 million in benefits by March 2019); *see also Amara XI*, 2018 WL 6242496, at \*3 (emphasizing that Cigna should "avoid further delay in remedy payments to class members").[7] Cigna relied on the Methodology Orders to calculate those benefits. From a practical perspective, it was therefore essential for Plaintiffs (or Cigna, if it so chose) to appeal promptly. Because a "practical rather than a technical construction of finality is especially appropriate in the post-judgment context," *Yalincak*, 853 F.3d at 636 (internal quotation marks

---

[7] Because Plaintiffs did not appeal within 30 days after the district court resolved the parties' attorney's fees dispute, we need not decide whether the Methodology Orders became final when the district court issued the last such order in November 2017 or whether the Attorney's Fees Order was the "final decision" under § 1291 into which the Methodology Orders merged. Either way, the *latest* Plaintiffs could appeal from the Methodology Orders was 30 days after the district court issued the Attorney's Fees Order.

omitted), these facts weigh heavily against Plaintiffs' argument that the Methodology Orders were not final even after Cigna began paying A+B benefits.

Plaintiffs' representations to the district court also undermine their argument that the Methodology Orders were non-final until they moved to enforce. In December 2017, Plaintiffs themselves contended that the district court "ha[d] completed its orders on the methodology for computing individual relief under the A+B reformation in this class action." Plaintiffs' 2017 Request for Attorney's Fees at 1. The district court agreed. *See, e.g.*, Joint App'x in No. 20-202, at 646 (noting in July 2018 that the parties would not be permitted to "relitigate methodology; and to the extent there are issues that could have been brought up in the motions related to methodology and weren't, it's really too late"). These statements fortify our conclusion that the Methodology Orders became final long before Plaintiffs appealed.

Plaintiffs' argument against finality is unpersuasive, moreover, because it implies that they could have challenged the Methodology Orders—and Cigna's calculation of reformed pension benefits for more than 27,500 individuals—at "some nebulous time in the future" when they decided to file a motion to enforce. *Martinez v. Carson*, 697 F.3d 1252, 1258 (10th Cir. 2012). Indeed, Plaintiffs' theory

28

implies that the Methodology Orders were immune from appellate review (because they were non-final) *unless* Plaintiffs chose to move for further relief. But when the district court issued the Attorney's Fees Order, "there [was] little prospect that further proceedings [would] occur to make [the Methodology Orders] final." Wright, Miller & Cooper, *supra*, § 3916. If the Methodology Orders were "not found final" at that time, "there [was] a real risk that all opportunity for review [would] be lost." *Id.*

Plaintiffs' motion to enforce and for sanctions only confirms their own view that the Methodology Orders "resolv[ed] important, but ancillary, [postjudgment] matters" and were thus "final decisions permitting appellate review." *Smith*, 246 F.3d at 1122 (citing *In re Farmers' Loan & Trust Co.*, 129 U.S. at 213–14). Similarly, "[f]inal disposition of a post-judgment motion for sanctions establishes a . . . final and appealable judgment." Wright, Miller & Cooper, *supra*, § 3915.6. And "[a]n appeal taken only after disposition of [a motion for] sanctions does not support review of the judgment on the merits if the time for appealing the judgment ha[s] run." *Id.* Indeed, the district court could not have revised the Methodology Orders and simultaneously held Cigna in contempt and imposed sanctions for violating the newly revised orders. Thus, Plaintiffs' motion for contempt and

sanctions necessarily presupposes that the Methodology Orders were final before Plaintiffs filed that motion.

In sum, Plaintiffs' appeal from the Sanctions Order cannot "revive lost opportunities to appeal" the Methodology Orders. Wright, Miller & Cooper, *supra*, § 3916. Because Plaintiffs did not timely appeal from the Methodology Orders, we lack jurisdiction to the extent Plaintiffs seek to challenge those orders.

**ii.**

The Sanctions Order, in contrast, is a "substantive post-judgment order," *Preferred Prescription*, 255 F.3d at 93, from which Plaintiffs timely appealed. Because we have jurisdiction over this portion of Plaintiffs' appeal, we deny Cigna's motion to dismiss in part. But "[t]he scope of appeal" from a postjudgment order is "restricted to the questions properly raised by [that] motion." Wright, Miller & Cooper, *supra*, § 3916. Our review thus extends only to whether the district court properly *interpreted* the Methodology Orders in the Sanctions Order, not whether the Methodology Orders were correctly decided in the first instance.

Plaintiffs argue that the district court erred in the Sanctions Order, but we are not persuaded. Plaintiffs first contend that the district court misconstrued the Methodology Orders in the Sanctions Order. "When a district court interprets its

30

own order, we apply an abuse-of-discretion standard." *PACA Tr. Creditors of Lenny Perry's Produce, Inc. v. Genecco Produce Inc.*, 913 F.3d 268, 275 (2d Cir. 2019). Plaintiffs argue that the district court misinterpreted the phrase "plan provisions in place at the time the lump sum was received" in one of the Methodology Orders to "refer[] to 'the mortality tables and interest rates' in effect at the time the lump sum was received." *Amara XII*, 2019 WL 3854300, at *1–2. On Plaintiffs' view, the Methodology Orders required Cigna to calculate benefits using the mortality tables and interest rates in effect at "the year of [a participant's] Part A eligibility"—that is, her retirement age. *Id.* at *2.

We are not persuaded that the district court abused its discretion in rejecting Plaintiffs' proposed interpretation. To begin, the district court explained that it had previously rejected "*Cigna's* proposal to tether the interest rate/mortality table year to the year of Part A eligibility." *Id.* (emphasis added). "[G]iven [that] rejection," the district court found Cigna's proposed interpretation of the Methodology Orders more persuasive "[i]n context." *Id.* The district court also noted that it had held in the Methodology Orders that Cigna was "permitt[ed] . . . to calculate the amount owed to all class members that have already received benefits as a lump sum, without waiting until those participants reach retirement age under

31

Part A." *Id.* Plaintiffs' argument conflicted with that explanation because it would require Cigna to wait until a participant reached retirement age to calculate her benefits. The district court finally observed that it had previously held in the Methodology Orders that "[f]ixing the interest rate at the rate available to a plan participant at the time he or she received the Part B lump sum captures the fact that plan participants had control to invest their money at that point in time." *Id.* The same was true for Plaintiffs' mortality-table-and-interest-rate argument in its motion for sanctions.

Plaintiffs also argue that the district court erred in concluding that they had waived certain arguments about the Methodology Orders. We review a district court's determination that a party has waived an argument for an abuse of discretion. *See Am. Trucking Ass'ns v. N.Y. State Thruway Auth.*, 886 F.3d 238, 244–45 (2d Cir. 2018). The district court "decline[d] to entertain" Plaintiffs' arguments about the methodology in the Sanctions Order because they "could have been brought up" sooner. *Amara XII*, 2019 WL 3854300, at *3. Plaintiffs have failed to show that this was an abuse of the district court's discretion. And because the district

court did not abuse its discretion in the Sanctions Order, we affirm the court's denial of Plaintiffs' motion for sanctions on the merits.

## II.   Appeal in No. 20-3219

Plaintiffs also appeal the district court's denial of their motion for an equitable accounting.   The Employee Retirement Income Security Act of 1974 ("ERISA") permits plaintiffs to seek "appropriate equitable relief."   29 U.S.C. § 1132(a)(3).   We assume that the district court could award an equitable accounting here because neither party argues otherwise.   "We review the district court's fashioning of equitable remedies under ERISA for abuse of discretion," *Frommert v. Conkright*, 913 F.3d 101, 107 (2d Cir. 2019), but "review the district court's findings of fact" only "for clear error," *Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 379 (2d Cir. 2002).

We conclude that the district court did not err in denying Plaintiffs' motion for an equitable accounting.   The district court held that Plaintiffs' request for "a post-judgment equitable accounting [was] unwarranted" because Cigna "ha[d] 'provided . . . acceptable explanations' for the 'potential problems with [its] compliance' that Plaintiffs ha[d] raised."   *Amara XIV*, 2020 WL 4548135, at *5 (quoting *Kifafi v. Hilton Hotels Ret. Plan*, 79 F. Supp. 3d 93, 110 (D.D.C. 2015), *aff'd*, 752 F.

33

App'x 8 (D.C. Cir. 2019)).   The district court observed that it had "previously ac-

cepted Cigna's representations that the current amounts owed to Class Members

have been remitted and the judgment satisfied."   *Id.*   It also noted that Cigna had

provided declarations from a "Vice President & Consulting Actuary with Pruden-

tial Retirement Insurance and Annuity Company" who "detail[ed] Cigna's efforts

to satisfy the judgment."   *Id.* at *3.   After Plaintiffs filed a motion for clarification

or reconsideration, the district court reaffirmed its conclusion that "Plaintiffs failed

to offer a persuasive substantive legal justification for why an accounting should

be ordered."   *Amara XV*, Special App'x in No. 20-3219, at 13.

We disagree with Plaintiffs that these conclusions constituted an abuse of

discretion.   Plaintiffs largely rehash factual arguments—rejected by the district

court—that allegedly show "substantial issues" with Cigna's implementation of

the A+B relief.   But the district court made a factual finding that Cigna had ade-

quately complied with the final judgment.   That finding was not clearly errone-

ous.   And given this factual finding, we discern "no abuse of discretion in [the

34

court's] denial of [Plaintiffs'] requests" for an equitable accounting. *Kifafi*, 752 F. App'x at 10.

Next, Plaintiffs assert that the district court erred by relying on the D.C. Circuit's unpublished opinion in *Kifafi*. But the district court recognized that "[w]hile of course . . . an unpublished opinion from another circuit has no binding effect, this Court may nonetheless consider that disposition as useful guidance." *Amara XIV*, 2020 WL 4548135, at *5 n.5. We have found persuasive unpublished opinions from other Circuits, *see, e.g.*, *United States v. Diaz*, 802 F.3d 234, 241 (2d Cir. 2015), and the district court did not err in citing *Kifafi* as "useful guidance."

Plaintiffs also argue that the district court erred by accepting factual representations from Cigna's counsel as "evidence." We disagree because the district court's opinion cited the parties' sworn declarations. *Amara XIV*, 2020 WL 4548135, at *3–5.

Plaintiffs finally contend that the district court erred in holding that it would "entertain no further post-trial motions" about the equitable accounting issue. *Amara XV*, Special App'x in No. 20-3219, at 13. But the district court so held in response to *Plaintiffs'* motion for "clarification" about whether its motion was "a final, immediately appealable post-judgment order." *Id.* The district court

correctly observed that "[r]ipeness for appeal is a determination made by the Court of Appeals, not the District Court." *Id.* Still, the district court clarified (apparently for Plaintiffs' benefit) that it had "denied Plaintiff's request for [an] accounting and will entertain no further post-trial motions on this subject." *Id.* As Cigna notes, however, the district court did not "prohibit[] Plaintiffs from ever seeking relief in the future" on different grounds. Cigna Br. in No. 20-3219, at 47. We discern no abuse of discretion here.

## CONCLUSION

We have considered Plaintiffs' remaining arguments and conclude that they lack merit.[8] In No. 20-202, we GRANT in part and DENY in part Cigna's motion to dismiss. We dismiss Plaintiffs' appeal from the Methodology Orders. We AFFIRM the Sanctions Order on the merits. In No. 20-3219, we AFFIRM the district court's order denying Plaintiffs' motion for an equitable accounting.

---

[8] Plaintiffs also move for the Court to take judicial notice of certain documents or to supplement the record to include those documents. That motion is DENIED. "Ordinarily, material not included in the record on appeal will not be considered." *Loria v. Gorman*, 306 F.3d 1271, 1280 n.2 (2d Cir. 2002). We consider extra-record evidence on appeal only in "extraordinary circumstances." *Int'l Bus. Machs. Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975). The documents Plaintiffs ask us to add to the record would make no difference in our resolution of this appeal and we discern no extraordinary circumstances justifying an expansion of the record on appeal.