24-418-cv
*Trade Links, LLC v. BI-QEM SA de CV*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of May, two thousand twenty-five.

Present:     GUIDO CALABRESI,
             BARRINGTON D. PARKER, JR.,
             WILLIAM J. NARDINI,
                  *Circuit Judges*.

_____

TRADE LINKS, LLC,

     *Plaintiff-Appellee*,

     v.                                                                      24-418-cv

BI-QEM SA DE CV,
BI-QEM, INC.,

     *Defendants-Appellants*.

_____

| | |
|---|---|
| *For Plaintiff-Appellee*: | KEITH A. MINOFF (Patrick J. McHugh, Patrick McHugh Law LLC, Tarrytown, NY, *on the brief*), Law Offices of Keith A. Minoff, P.C., Northampton, MA. |
| *For Defendants-Appellants*: | JAMES P. CINQUE, Cinque & Cinque, P.C., New York, NY. |

Appeal from a judgment of the United States District Court for the District of Connecticut

1

(Kari A. Dooley, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the appeals of the district court judgment entered on June 13, 2022, and the order entered on February 27, 2023, are **DISMISSED**, and that the March 27, 2023, order of the district court is **AFFIRMED**.

Defendants-Appellants BI-QEM SA de CV and BI-QEM, Inc. (collectively, "BI-QEM") appeal from a series of decisions entered by the United States District Court for the District of Connecticut (Kari A. Dooley, *District Judge*) resolving the underlying breach-of-contract dispute and awarding attorneys' fees and costs to Plaintiff-Appellee Trade Links, LLC ("Trade Links"). The district court decisions contested on appeal include: (1) a judgment on the merits, following a jury trial, entered on June 13, 2022, awarding $965,000 in damages to Trade Links for lost profits; (2) the denial of BI-QEM's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure ("Rule") 50(b), on February 27, 2023; and (3) the granting of Trade Links's Rule 54 motion for attorneys' fees and costs, based on the parties' Sales Representative Agreement ("SRA"), in an order entered on March 27, 2023, which was finalized when the district court awarded Trade Links $775,844.29 in attorneys' fees and costs on January 18, 2024.[1] Trade Links moved to dismiss as untimely those portions of BI-QEM's appeal that concern the judgment on the merits and the denial of the Rule 50(b) motion, and it argues that the district court correctly awarded attorneys' fees and costs.[2] We agree with Trade Links and therefore dismiss part of the

---

[1] Although BI-QEM's notice of appeal lists, among the orders being appealed, the award of $775,844.29 in attorneys' fees and costs, its appellate brief makes no argument about the quantum of the award. Accordingly, we deem any such challenge abandoned. *See, e.g.*, *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

[2] Trade Links originally moved to dismiss as untimely BI-QEM's appeal of the district court's order granting

2

appeal on jurisdictional grounds and affirm as to the award of attorneys' fees and costs. We assume the parties' familiarity with the case.

## I. Motion to Dismiss

In its motion to dismiss, Trade Links contends that BI-QEM's notice of appeal, filed on February 16, 2024, was untimely with respect to the district court's judgment on the merits (which was entered on the docket on June 13, 2022) and the denial of BI-QEM's post-trial motion under Rule 50(b) for judgment as a matter of law (which was orally pronounced at a hearing on February 27, 2023, and memorialized in a minute entry entered on the docket that same day).

Under 28 U.S.C. § 2107(a) and Federal Rule of Appellate Procedure ("FRAP") 4(a)(1)(A), civil litigants generally must file a notice of appeal within 30 days after the "entry" of the judgment or order being appealed. 28 U.S.C. § 2107(a) (generally requiring notice of appeal in civil case to be filed "within thirty days after the entry of such judgment, order or decree"); Fed. R. App. P. 4(a)(1)(A) (requiring notice of appeal in civil case to be filed "within 30 days after entry of the judgment or order appealed from"). The failure to do so prevents us from acquiring appellate jurisdiction, and there is no equitable exception to this 30-day rule. *See Amara v. Cigna Corp.*, 53 F.4th 241, 247 n.3 (2d Cir. 2022). That said, when a litigant files a timely, qualifying post-trial motion, including a Rule 50(b) motion, "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." FRAP 4(a)(4)(A).

The parties agree about what happened in the district court. A quick review of the docket is therefore warranted. The district court entered a written judgment on the underlying merits

Trade Links's motion for attorneys' fees. However, in its subsequent reply to the motion, Trade Links concedes that the district court's order was not sufficiently final for purposes of appeal until the court entered its follow-on order on January 18, 2024, quantifying the amount of fees and costs owed to Trade Links.

dispute, after the jury trial, on June 13, 2022. The parties agree that the time to file a notice of appeal from that judgment did not begin to run immediately because BI-QEM filed a timely Rule 50(b) motion on July 11, 2022. At a hearing on February 27, 2023, the district court heard argument and orally denied that motion. On that same day—February 27, 2023—there is a docket entry that reads "Minute Entry," the text of which memorializes a number of the district court's oral rulings during the hearing. That docket text includes the language: "Proceedings held before Judge Kari A. Dooley: . . . denying for the reasons stated on the record [BI-QEM's] Motion for Judgment as a Matter of Law . . . ." App'x at 7. The docket entry contains a hyperlink to a document entitled "COURTROOM MINUTES-CIVIL," which lists several motions that were considered by the district court during the hearing on February 27, 2023. *Id.* at 196. One of the listed motions is "#274 Motion for Judgment as a Matter of Law," next to which the box "denied" has been checked. *Id.*

The parties agree that the district court's oral ruling denying the Rule 50(b) motion became final and appealable on February 27, 2023, such that the 30-day window for filing an appeal started to run, only if the district court's minute entry on that date constitutes "entry" of an order denying that motion for purposes of FRAP 4(a)(4)(A). Trade Links argues that the Minute Entry is precisely such an "entry," because it appears on the docket and expressly states that the district court denied the Rule 50(b) motion. We agree. Pursuant to Federal Rule of Civil Procedure 58(a)(1), "a separate document is not required for an order disposing of a motion . . . for judgment under Rule 50(b)," and under Rule 58(c), "if a separate document is not required," then judgment is entered "when the judgment is entered in the civil docket under Rule 79(a)," which requires the Clerk of Court to note on the docket "the substance and date of entry of each order and judgment,"

4

Fed. R. Civ. P. 79(a)(3). The Minute Entry satisfies both criteria of Rule 79: It reflects the substance of the order being appealed (that the district court denied the Rule 50(b) motion) and the date on which it was entered (February 27, 2023). No more was needed.

BI-QEM nevertheless argues that the Minute Entry did not constitute a final, appealable order because it failed to satisfy Local Rule 77(a)(2) of the United States District Court for the District of Connecticut, which provides that "[t]he notation in the appropriate docket of an 'order' . . . shall constitute the entry of an order." BI-QEM contends that under Local Rule 77(a)(2) the word "order" must appear in a minute entry if it is to constitute an order that triggers the time to appeal. This misreads the Local Rules. Local Rule 77(a)(2) does indeed provide that inclusion of the word "order" in a docket entry is *sufficient* to signal that what is being entered is, indeed, an order. But it does not provide that inclusion of that word is the *only,* or *necessary,* way to reflect entry of an order. Such an interpretation of Local Rule 77(a)(2) rings of empty formalism. In this case, the docketed Minute Entry unmistakably reflected the district court's conclusive adjudication of BI-QEM's Rule 50(b) motion by stating that it had been "den[ied] for the reasons stated on the record." App'x at 7. This was enough to convey the "substance and date of entry" of the court's order for purposes of Rule 79(a)(3). *See also Redhead v. Conf. of Seventh-Day Adventists*, 360 F. App'x 232, 234 (2d Cir. 2010) (summary order) (recognizing that a district court's use of a minute entry "explicitly stat[ing] that the reasoning of the district court and its order are contained in the court transcript" is an acceptable form of entering a judgment disposing of a Rule 50(a) motion).

Because BI-QEM filed its notice of appeal more than 30 days after entry of the district court's denial of its Rule 50(b) motion, this Court lacks jurisdiction to consider BI-QEM's appeal

of that motion or the underlying judgment on the merits. Its appeal is therefore dismissed with respect to those issues.

## II.    Attorneys' Fees and Costs

The sole surviving issue on appeal is BI-QEM's contention that the district court erred in holding that Trade Links was entitled to an award of attorneys' fees and costs under Section 7(b) of the SRA, which reads as follows:

> *Indemnification Against Breach of Agreement.* Any party breaching its obligations under this Agreement (a "Defaulting Party") shall indemnify and hold the other party harmless against all claims, losses, damages, costs, and expenses (including reasonable attorneys' fees) of any nature or kind arising directly or indirectly from such breach.

App'x at 372-73. We review this question of contract interpretation *de novo*. *See Colon de Mejias v. Lamont*, 963 F.3d 196, 202 (2d Cir. 2020).

"The awarding of attorneys' fees in diversity cases such as this is governed by state law . . . ." *Grand Union Co. v. Cord Meyer Dev. Co.*, 761 F.2d 141, 147 (2d Cir. 1985).[3] The parties' briefs assume that Connecticut law applies here, and we proceed on the same basis. Under the American rule, adhered to in Connecticut, "attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." *24 Leggett St. Ltd. P'ship v. Beacon Indus., Inc.*, 239 Conn. 284, 311 (1996). Trade Links argues that Section 7(b) of the SRA provides an express contractual authorization for its award of attorneys' fees and costs arising from the failure of a contractual party to meet its obligations, while BI-QEM contends that this provision applies only to third-party disputes as opposed to this first-party action.

---

[3] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

We conclude that the SRA's text and Connecticut's case law support the conclusion that the expansive language of Section 7(b) incorporates indemnity for first-party actions. Section 7(b) is worded broadly, both in terms of the covered parties and the covered claims. With respect to parties, the provision requires indemnification to be paid by "[a]ny party breaching its obligations under this agreement" (which clearly applies to one of the parties to the contract itself) and to be paid to "the other party" (that is, the party to the contract which has not defaulted). With respect to claims, Section 7(b) is similarly broad, covering "all claims . . . of any nature or kind arising directly or indirectly from such breach," with no other limitation (say, to third-party claims). As the district court acknowledged, Connecticut courts have read such broad indemnification provisions for "all claims" as not limited to third-party actions. App. Doc. No. 3 at 14; *see also Heyman Assocs. No. 5, L.P. v. FelCor TRS Guar., L.P.*, 153 Conn. App. 387, 417 (2014) ("Given the broad language of the indemnification provision and the absence of any indication that it was limited to third party claims, we conclude that the provision is not limited to third party claims, and that it provides for an award of attorney's fees between the plaintiffs and the defendant for a breach of the restrictive covenant.").

BI-QEM counters by relying on our Court's non-precedential decision in *Rand-Whitney Containerboard Ltd. Partnership v. Town of Montville*, 290 F. App'x 430 (2d Cir. 2008) (summary order), for the proposition that Section 7(b) is an indemnification provision that applies only to third-party claims. In *Rand-Whitney*, we held that the contractual indemnification provision at issue there unambiguously did not apply to first-party actions. *Id.* at 433 ("Reading the contract as a whole, we find that the indemnification provision was not meant to apply to intra-party suits. Furthermore, under Connecticut law, the words 'indemnification' and 'hold . . . harmless'—which

7

are used in this contract—are typically interpreted to apply to third-party claims." (citing *Amoco Oil Co. v. Liberty Auto and Elec. Co.*, 262 Conn. 142, 144 (2002)). BI-QEM's comparison is inapt. Even though indemnification provisions "typically" apply to third-party actions, that does not prevent parties from drafting a contract in such a way as to use the term "indemnification" to create rights held by either party against intra-party breach of the agreement. *See Heyman*, 153 Conn. App. at 411-17. That circumstance is presented here. As noted above, the indemnification provision expressly applies to "[a]ny party . . . under this Agreement," meaning the contractual parties. App'x at 372-73. Moreover, the parties used the language "indemnify" and "hold the other party harmless" to describe a contractual party's right to be held harmless against a broadly defined category of claims—namely, "against all claims, losses, damages, costs, and expenses (including reasonable attorneys' fees) of any nature or kind arising directly or indirectly from [the contractual party's] breach." *Id.* When "reviewing a claim that attorney's fees are authorized by contract, [the Court must] apply the well established principle that a contract must be construed to effectuate the intent of the parties, which is determined from its language . . . interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Total Recycling Servs. of Conn., Inc. v. Conn. Oil Recycling Servs., LLC*, 308 Conn. 312, 327 (2013). In our view, the language of SRA Section 7(b) reflects the will of the contracting parties to ensure mutual coverage for attorneys' fees and costs (among others) following any breach of SRA obligations by a contractual party.

\* \* \*

We have considered the Appellants' remaining arguments and find them to be unpersuasive. Accordingly, we **DISMISS** BI-QEM's appeal of the district court's judgment on

8

the merits and subsequent denial of BI-QEM's motion for judgment as a matter of law. We **AFFIRM** the judgment of the district court as to Trade Links's entitlement to an award of attorneys' fees and costs.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

9